Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Nicholas Rosenthal (State Bar No. 268297)
nrosenthal@diversitylaw.com
**DIVERSITY LAW GROUP, A Professional Corporation**
550 South Hope Street, Suite 2655
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class

*Additional Counsel On Next Page

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC RODRIGUEZ, as an individual and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>NIKE RETAIL SERVICES, INC., an Oregon corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.: 5:14-CV-1508 BLF<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        February 11, 2016<br>Time:        9:00 a.m.<br>Courtroom:  3, 5th Floor<br>Judge:        Hon. Beth Labson Freeman<br><br>Complaint Filed:    February 25, 2014 |

1

1

2 WILLIAM L. MARDER, ESQ. (CBN 170131)
Polaris Law Group LLP
3 501 San Benito Street, Suite 200
Hollister, CA 95023
4 Tel: (831) 531-4214
Fax: (831) 634-0333
5 Email: bill@polarislawgroup.com

6
Dennis S. Hyun (State Bar No. 224240)
7 dhyun@hyunlegal.com
HYUN LEGAL, APC
8 550 S. Hope St., Suite 2655
Los Angeles, CA 90071
9 (213) 488-6555
(213) 488-6554 facsimile
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 11, 2016, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Beth Labson Freeman, Plaintiff Isaac Rodriguez ("Plaintiff") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated, for an order:

1.     Determining that a class action is proper as to the First and Second Causes of Action contained in the First Amended Complaint pursuant to Federal Rule of Civil Procedure 23, on the grounds that (1) the Class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the Class, (3) the class representative's claims are typical of the claims of the Class, and (4) the class representative will fairly and adequately protect the interests of the Class.

2.     Determining that class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(3).

3.     Certifying the following Class:
       All current and former non-exempt retail store employees of
       Defendant who worked in California during the period from
       February 25, 2010 to the present.

4.     Finding Plaintiff Isaac Rodriguez to be an adequate representative and certifying him as the class representative herein.

5.     Finding Plaintiff's counsel and their respective firms, namely Larry W. Lee and Nick Rosenthal of Diversity Law Group, P.C., Dennis S. Hyun of Hyun Legal, APC, and William L. Marder of Polaris Law Group LLP as adequate class counsel and certifying them as class counsel herein.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declarations of Larry W. Lee, Nick Rosenthal, Dennis S. Hyun, William L. Marder, Isaac Rodriguez and Steven Nelson filed herewith, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

1

Dated: November 13, 2015                    DIVERSITY LAW GROUP, P.C.

2

3

4
By:/s/ Larry W. Lee
                                            LARRY W. LEE
5                                           NICHOLAS ROSENTHAL
                                            Attorneys for Plaintiff and the Class

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION......................................................................................... 1

II.     CALIFORNIA LAW REQUIRES ALL NON-EXEMPT EMPLOYEES TO BE
        PAID FOR ALL HOURS SPENT UNDER THE CONTROL OF THE EMPLOYER
        ........................................................................................................................ 1

III.    FACTUAL AND PROCEDURAL BACKGROUND ................................... 1

        A.      Defendant's Mandatory, Off-the-Clock Security Check Policy ................. 2

        B.      The Common Experiences of Plaintiff and Class Members.......................... 4

        C.      Procedural Background ................................................................................. 5

IV.     ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION ARE EASILY
        ESTABLISHED ............................................................................................. 6

        A.      The Requirements of Fed.R.Civ.P. 23(a) are Met ....................................... 7

                1.   The Classes Are Ascertainable and Meet Numerosity............ 7

                2.   There Are Common Questions of Law and Fact..................... 7

                3.   Representative Plaintiff's Claims are Typical........................ 12

                4.   The Adequacy Requirement Is Met ........................................ 12

                        a.   Plaintiff is an Adequate Representative....................... 13

                        b.   Competent Class Counsel ............................................. 13

        B.      The Predominance Requirement of Fed.R.Civ.P. 23(b)(3) is Met............... 13

        C.      A Class Action is the Superior Method for Adjudication ............................. 14

V.      A CLASS-WIDE TRIAL IS MANAGEABLE ............................................ 15

VI.     CONCLUSION................................................................................................ 15

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**State Cases**

3

*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121, 136-37.......................................................... 15

4

*Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, (2012)................................................. 15

5

*Daar v. Yellow Cab Co.*, 67 Cal. 2d 695, 713-14 (1967)................................................................ 14

6

*Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220, 240 (2013)..................................... 14

7

*Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1532 (2008) ................................. 15

8

*Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 582 (2000) ...................................................... 1, 10

9

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004).................................... 15

10

**Federal Cases**

11

*Abdullah v. U.S. Sec. Assoc.'s, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) .................................. 8, 14

12

*Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 550 (E.D. Cal. 2010) ..................................... 11

13

*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ............................................................... 8

14

*Avilez v. Pinkerton Gov't Serv.*, 286 F.R.D. 450, 466-67 (C.D. Cal. 2012) ................................. 14

15

*Bibo v. Fed. Exp., Inc.*, No. C 07-2505 TEH, 2009 WL 1068880, at *4 (N.D. Cal. Apr. 21, 2009)

16

    ................................................................................................................................................ 11

17

*Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)................................................................. 16

18

*California Rural Legal Assistance v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) .. 12

19

*Californians for Disability Rights v. Dept. of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) ...... 8

20

*Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008) ................................................. 10

21

*Frlekin v. Apple Inc.*, 2015 U.S. Dist. LEXIS 92768, at *1-2 (N.D. Cal. July 16, 2015).......... 9, 10

22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)........................................ 8, 12, 14

23

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964) .................... 7

24

*In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1185 (N.D. Cal. 2013) ............ 8

25

*Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK, 2012 WL 1366052, at *20 (C.D. Cal.

    Apr. 18, 2012) ........................................................................................................... 11, 14, 16

26

*Kurihara v. Best Buy Co.*, 2007 WL 2501698 (N.D. Cal. Aug. 30, 2007) ................................... 10

27

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013)........................................ 8, 14

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*, 244 F.3d 1152, 1163 (9th Cir. 2001).. 15

*McKenzie v. Federal Exp. Corp.*, 275 F.R.D. 290, 300 (C.D. Cal. 2011) (same........................... 14

*Miranda v. Coach, Inc.*, No. 14-CV-02031-JD, 2015 WL 1788955, at *2 (N.D. Cal. Apr. 17, 2015) ................................................................................................................................. 2

*O'Donnell v. TD Ameritrade, Inc.*, 2008 U.S. Dist. LEXIS 49829, at *11 (S.D. Cal. 2008) ........ 15

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 442 (N.D. Cal. 2008) ......................... 11, 14

*Otsuka v. Polo Ralph Lauren Corp.*, No. C 07-02780 SI, 2010 WL 366653, at *5 (N.D. Cal. Jan. 25, 2010) ...................................................................................................................... 2

*Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 260-61 (N.D. Cal. 2015).................... 11

*Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)....................................................... 13

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485-86 (C.D. Cal. 2012)........................... 8

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 165 (C.D. Cal. 2002) ........................................................................................................ 12

**State Statutes**

California Labor Code § 510........................................................................................... 6

California Labor Code § 1194......................................................................................... 6

California Labor Code §1197........................................................................................... 6

California Business and Professions Code § 17200........................................................... 6

**Federal Rules**

Federal Rule of Civil Procedure 23................................................................................. 7

Federal Rule of Civil Procedure 23(a) ............................................................................ 7

Federal Rule of Civil Procedure 23(a)(1)........................................................................ 7

Federal Rule of Civil Procedure 23(a)(2)........................................................................ 8

Federal Rule of Civil Procedure 23(a)(4)........................................................................ 13

Federal Rule of Civil Procedure 23(b) ............................................................................ 7

Federal Rule of Civil Procedure 23(b)(3) .................................................................. 14, 15

**Statutes**

IWC Wage Order No. 7-2001 ........................................................................................ 1

iii

## I.      INTRODUCTION

This case involves a single, undisputed, predominant question of law: Should Defendant Nike Retail Services, Inc.'s ("Defendant" or "Nike") employees be compensated for time spent undergoing mandatory off-the-clock security checks?  More specifically, to prevent employee theft, Defendant mandates that all of its retail employees in the State of California undergo a security check whenever they exit the store, whether or not a bag is carried, which includes undergoing a visual inspection, and if carrying a bag, opening their bag to allow for an inspection. It is further undisputed that employees are <u>not</u> paid for any of this time spent undergoing these checks.  Indeed, Defendant's FRCP 30(b)(6) witness testified that, although these checks are performed for Nike's benefit, it is Nike's class-wide policy and practice that employees are not paid for time spent undergoing security checks.  Moreover, all of Nike's own declarants submitted in support of its Motion to Deny Class Certification confirm that Nike maintained a class-wide policy and practice of requiring off-the-clock security checks.

As the facts regarding Defendant's class-wide policies and practices are not disputed, this case presents a common question of liability that is capable of being resolved in one stroke.  In sum, Plaintiff Isaac Rodriguez's ("Plaintiff") Motion for Class Certification should be granted.

## II.     CALIFORNIA LAW REQUIRES ALL NON-EXEMPT EMPLOYEES TO BE PAID FOR ALL HOURS SPENT UNDER THE CONTROL OF THE EMPLOYER

The IWC Wage Order at issue here requires employers to pay employees for all "hours worked." IWC Wage Order No. 7-2001. "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Id*. § 2(G)

As the California Supreme Court held in *Morillion v. Royal Packing Co*., 22 Cal.4th 575, 582 (2000), an employee must be paid whenever he or she is "subject to the control of an employer."  In *Morillion*, 22 Cal. 4th at 586-87, the California Supreme Court considered whether employees must be compensated for time spent riding an employer-provided bus to the fields where they worked.  The employer required the employees to ride the bus to the fields.  Given

1  that the employer controlled the employee's activities by requiring them to ride the buses, the

2  California Supreme Court held that this time must be paid.  *Id.*

3        Similarly, here, Defendant requires all of its employees to undergo a security check after

4  clocking-out whenever these employees leave the store, which includes a visual inspection, as

5  well as a physical inspection of the contents of any bags brought onto the premises.  These

6  security checks are mandated by company policy.  As such, it is undisputed that these employees

7  are under Nike's control and, therefore, should be paid.  *See, e.g.*, *Miranda v. Coach, Inc.*, No.

8  14-CV-02031-JD, 2015 WL 1788955, at *2 (N.D. Cal. Apr. 17, 2015) (holding that the

9  "plaintiffs' claims under the California Labor Code are viable and will go forward"; the plaintiffs

10  alleged that all employees were required to undergo security checks before leaving the store);

11  *Otsuka v. Polo Ralph Lauren Corp.*, No. C 07-02780 SI, 2010 WL 366653, at *5 (N.D. Cal. Jan.

12  25, 2010) ("Polo does not dispute that it maintains a uniform policy requiring employees to

13  submit to bag searches, or that it does not compensate employees for time spent waiting for these

14  searches.").

15  **III.    FACTUAL AND PROCEDURAL BACKGROUND**

16        **A.    Defendant's Mandatory, Off-the-Clock Security Check Policy**

17        As there is no dispute about the actual policy at issue, the factual recitation necessary for

18  the instant Motion is relatively simple.  Defendant Nike Retail Services, Inc. ("Nike" or

19  "Defendant") operates more than 30 retail stores throughout the State of California.  (Deposition

20  of Jeffrey McPike ("McPike Depo."), 171:23-172:4).[1]  In fact, Nike maintains blueprints for all

21  of its stores which show the physical layout, including where the time-clocks, the single

22  entrance/exit (which employees are required to use), the break room/lockers and surveillance

23  cameras are located.  (McPike Depo. 19:18-26:2). With respect to the surveillance camera

24  footage, it is used by Nike to prevent shoplifting and, therefore, the cameras capture footage of

25  the entrance/exit for all of Nike's stores and some record the time-clock areas.  (McPike Depo.

26  26:9-16, 27:1-20).  The footage is stored on hard drives.  (*Id.*)  Nike houses all employee time-

27  _____

28  [1] The relevant portions of the deposition of Jeffrey McPike, Defndant's FRCP 30(b)(6) witness is attached to the supporting Declaration of Larry W. Lee as Exhibit A.

2

clocks in the break-room or "locker" area, which is located behind the stockroom.  (McPike Depo. 39:1-40:7).  For example, with respect to the physical layout of stores, all "Nike Town" stores are multiple-level stores, *i.e.*, two to three floors, with the break room containing the time clock always located on the very top floor.  (McPike Depo. 43:6-44:19).  With respect to Nike's "Factory Stores," these are typically one-level, with the break room containing the time clock always located at the back of the store.  (McPike Depo. 45:6-46:18).  Although the store layouts may slightly vary, it is Nike's policy to require all employees to enter/exit through the front door used by the general public.  (McPike Depo. 42:9-43:1).

Nike has set policies that apply to all of its California retail locations and with which all California employees are to comply.  (McPike Depo., 65:6-17).  Specifically, Nike mandates that <u>all</u> of its retail employees submit to a "security check" before exiting the store at any time, regardless of whether they have a bag or not.  (McPike Depo. 49:20-50:6, 94:24-95:24, 128:8-13).  In other words, whenever an employee leaves the store, he or she must meet with the manager at the store entrance/exit and undergo a visual inspection, which consists of the manager visually inspecting the employee to ensure that the employee does not have a bag or any unpaid merchandise.  (McPike Depo. 94:25-95:24).

Further, when an employee brings a bag, the employee must also open his or her bag so the manager can conduct a visual inspection of the contents of the bag.  (McPike Depo. 50:2-7, 82:7-21, 93:17-23).  All security checks are to be performed at the point of exit, which is at the front entrance of each store.  (McPike Depo. 42:9-43:1; 50:10-12).  Any supervisor or third-party security contractor is to perform all security checks under the view of a surveillance camera. (McPike Depo. 75:15-76:13).  If the surveillance camera is not functioning, then the security check is to be performed by two people.  (McPike Depo. 75:15-24).  Nike has not changed its off-the-clock security check policy and the same policy has been in place over the entire class period.  (McPike Depo. 115:9-18).

In fact, Nike's admitted company policy is that time spent waiting for and submitting to security or bag checks *is off-the-clock*.  (McPike Depo. 115:9-18).  As Defendant's FRCP 30(b)(6) witness testified:

Q:     Would you agree with me that as a matter of policy, not asking what actually happens, but as a matter of policy, the physical act of the inspection or bag check happens after the employee clocks out of whether it be the Kronos or Staff Works system; correct?

A:     In the evenings the employee is to gather their [belongings], backpacks, things out of their lockers, clock out and then exit the building.  Upon exiting the building, they hold their bag open for an inspection, yes.

Q:     Right, so that physical act of the inspection happens, based on what you said, as a matter of policy happens after the employee clocks out; correct?

A:     In most cases that is what is supposed to happen, yes.

(McPike Depo., 72:23-73:14).

Indeed, this admitted practice is further supported by the logic in the manner in which the employee time clocks are placed in relation to where the security checks take place.  Specifically, as shown above, employee time clocks are located in the break-room area at each of the Defendant's retail stores, which is never located anywhere remotely close to the front entrance. To the contrary, these break-rooms are always located at the back of the store for single-level stores, and on the top floor for most of Defendant's multiple-level stores.  As further shown above, all security checks are to take place at the front entrance of each retail store.  Thus, it would clearly be impractical and illogical for employees to first be checked at the front of the store, then walk all the way through to store to clock out, and then walk through the store again to the front entrance without having to be checked again.  Rather, and as supported by Defendant's own testimony, the logical process is for the employees to first clock out, then walk through the store, and finally get checked at the front entrance and released from the store, and thereby resulting in the security check being performed off-the-clock.

**B.     The Common Experiences of Plaintiff and Class Members**

Plaintiff was employed by Defendant as an hourly-paid employee from on or about November 11, 2011, to on or about January 11, 2012, at Defendant's retail store located in Gilroy, California.  (Declaration of Isaac Rodriguez ("Rodriguez Decl.") ¶ 2.  Plaintiff was subject to security checks whenever he left the store, which included undergoing a visual inspection, as well as opening any bags he had with him.  (Rodriguez Decl. ¶¶ 3-7; Deposition of Isaac Rodriguez ("Rodriguez Depo."), 39:3-40:2, 52:17-22, 53:6-9, 54:23-55:4).  Plaintiff was never compensated

4

by Defendant any wages for the time spent undergoing these security checks as they were all done off-the-clock.  (*Id.*)

Likewise, as Defendant's ***own declarants*** state, they were also required to undergo security checks and they were also not paid.  Specifically, each and every one of Defendant's declarants admit that they clock out first before undergoing a security check.  (Declaration of Efrain Navarro-Amaya ¶¶ 12-13; Declaration of Pawandeep "Puvs" Aujla ¶ 14; Declaration of Matt DeJesus ¶ 16; Declaration of Jennifer Wade ¶¶ 16, 21-23; Declaration of Justin Daquina ¶¶ 9, 12; Declaration of Esmeraldo Alvarado ¶¶ 8-9; Declaration of Jessica Santiago ¶¶ 11-12; Declaration of Jeffrey Ortiz ¶¶ 8-9, 13, 15-16; Declaration of Kevin Kawaoka ¶ 19; Declaration of Kyle Garcia ¶¶ 13, 15; Declaration of Mark Anderson ¶¶ 10, 12; Declaration of Lilly Ajzac ¶¶ 12, 14-15; Declaration of Kristol Clyde ¶¶ 17-19; Declaration of Samantha Enriquez ¶¶ 8, 17-18; Declaration of Mary Sabino ¶¶ 9, 13; Declaration of Kyrstal Meraz ¶¶ 9, 11-12; Declaration of Alyssa Licudine ¶¶ 11, 16-17; Declaration of Janice Balagot ¶ 15; Declaration of Jacob Biondo ¶ 13; Declaration of Angelica Rivera ¶ 19; Declaration of Joel Schmidt ¶ 16; Declaration of Stephanie Hernandez ¶¶ 10, 13; Declaration of Monica Dail ¶ 14; Declaration of Roderick Jones ¶¶ 10, 17; Declaration of Erica Lizarraga ¶ 17; Declaration of Caitlin Agosti ¶ 16; Declaration of Skye Atchley ¶¶ 11, 13; Declaration of Alesha Grant ¶¶ 16, 19-22; Declaration of Nicole Pagkalinawan ¶ 11; Declaration of Brian Arcinas ¶¶ 16-17; Declaration of Kevin Sun ¶ 10; Declaration of Jeremy Kilgore ¶ 11; Declaration of Christopher Gaines ¶¶ 12, 15; Declaration of Daniel Devine ¶¶ 15, 17-18; Declaration of Abe Zuniga ¶¶ 12, 14-15; Declaration of Marco Caliz Jr. ¶¶ 7-8, 10; Declaration of Johnny Diaz ¶¶ 17, 21-22; Declaration of David Shaw ¶¶ 12-13; Declaration of Frankie Santelises ¶¶ 9-10; Declaration of Erin Copeland ¶¶ 12, 14; Declaration of Elsa Iwai ¶¶ 9, 13-14; Declaration of Brenda Hernandez ¶¶ 13-14; Declaration of Breanne Murphy ¶¶ 8, 11-12; Declaration of David Voigtlaender ¶¶ 12-14; Declaration of Megan Copeland ¶¶ 10-13; Declaration of Scott Eldridge ¶¶ 10-12; Declaration of Jenna Etherington ¶¶ 17-20.)[2]

---

[2] Defendant's declarants are the 53 declarations Defendant obtained from the putative class members which Defendant submitted as part of its Motion to Deny Class Certification, which are attached as Exhibits 8 through 60 of Defendant's Appendix of Exhibits in Support of its Motion to Deny Class Certification.  *See* Doc. No. 44-1 through 44-4.

C.      **Procedural Background**

Plaintiff filed a class-action complaint on February 25, 2014 in Santa Clara Superior Court.  On April 1, 2014, Defendant removed the matter to this Court.  On December 8, 2014, Plaintiff filed a First Amended Complaint.  The First Amended Complaint alleges causes of action for (1) violation of California Labor Code §§ 1194 and 1197 for failure to pay minimum wages; (2) violation of California Labor Code §§ 510 and 1194 for failure to pay overtime wages; and (3) violation of California Business and Professions Code § 17200 *et seq.* for unfair business practices.  All of the claims alleged in the First Amended Complaint are predicated upon Defendant's admitted practice of forcing employees to under off-the-clock security checks.

On August 14, 2014, Defendant took the deposition of Plaintiff Isaac Rodriguez. (Declaration of Larry W. Lee ("Lee Decl.") ¶ 3).  On January 16, 2015, Plaintiff took the deposition of Jeffrey McPike, who was designated as Defendant's FRCP 30(b)(6) witness.  Lee Decl. ¶ 4, Exh. A.

During the discovery phase of this lawsuit related to class certification, Plaintiff also sought Defendant to produce the names and contact information of the putative class members, or alternatively to issue a "*Belaire West*" letter to allow the putative class members to opt-out of having his/her contact information provided to Plaintiff's counsel.  Lee Decl. ¶ 5.  After much dispute as to Plaintiff's right to such information, including the submission of the discovery dispute to Magistrate Judge Lloyd, it was ultimately ordered by the Judge Lloyd that a "*Belaire West*" letter be issued to the ***entire*** putative class.  *See* Doc. No. 37.  While Defendant sought to appeal Judge Lloyd's decision to this Court, such appeal was ultimately denied.  *See* Doc. No. 43. As such, on August 25, 2015, a "*Belaire West*" letter was disseminated to 9,175 putative class members.  Lee Decl. ¶ 5.

On October 20, 2015, Defendant filed its Motion to Deny Class Certification, which was originally scheduled to be heard before this current Motion for Class Certification.  Lee Decl. ¶ 6. Thereafter, Plaintiff requested, and this Court ordered, that Defendant's Motion to Deny Class Certification be set to be heard concurrently with this Motion for Class Certification.  *See* Doc. No. 47.

6

## IV.    ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION ARE EASILY ESTABLISHED

Rule 23 of the Federal Rules of Civil Procedure authorizes class actions when the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).  Additionally, the requirements of at least one subsection of Rule 23(b) must be satisfied.

Plaintiff seeks to certify the following Class:

> All current and former non-exempt retail store employees of Defendant who worked in California during the period from February 25, 2010 to the present.

### A.    The Requirements of Fed. R. Civ. P. 23(a) are Met

### 1.    The Classes Are Ascertainable and Meet Numerosity

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable."  "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964) (citation omitted).

The Class is both ascertainable, from Defendant's own records, and numerous.  As set forth in Defendant's Notice of Removal, as of April 1, 2014, Defendant had identified at least 6,242 non-exempt employees who belong to the class.  (See Declaration of Steven Nelson in Support of Defendant's Notice of Removal ("Nelson Decl.") ¶¶ 4-5).

Moreover, as stated above, as part of the discovery process, a "*Belaire West*" letter be issued to the ***entire*** putative class which was based on Defendant's identification of at least 9,175 putative class members as of August 25, 2015.

Thus, not only is the class sufficiently numerous, but clearly ascertainable from Defendant's own records.

### 2.    There Are Common Questions of Law and Fact

There must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

7

This requirement "has been construed permissively." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998). Indeed, "[t]he existence of even one significant issue common to the class is sufficient to warrant certification." *Californians for Disability Rights v. Dept. of Transp*., 249 F.R.D. 334, 346 (N.D. Cal. 2008); *see also Abdullah v. U.S. Sec. Assoc.'s, Inc*., 731 F.3d 952, 957 (9th Cir. 2013) ("all that Rule 23(a)(2) requires is 'a single significant question of law or fact'"). Commonality is satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). This case contains only a limited question of law and fact, which easily satisfies the commonality requirement as to the Class seeking certification in this action:

- Should Defendant's employees be compensated for time spent undergoing mandatory off-the-clock security checks?

Plaintiff anticipates that Defendant will focus on alleged differences in the damages suffered by putative class members in an attempt to demonstrate lack of commonality. However, differences in damages are not a proper basis for undermining commonality. Commonality in this instance simply requires that class members be subject to a common policy or practice – unpaid bag or security checks – not that all putative class members suffered the same harm. *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 513-14 (9th Cir. 2013) (holding that purported differences in damages cannot defeat class certification: "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)"); *In re High-Tech Employee Antitrust Litig*., 985 F. Supp. 2d 1167, 1185 (N.D. Cal. 2013) ("even after *Comcast*, under Ninth Circuit law, the fact that damages calculations would require individualized inquiries does not defeat certification of a Rule 23(b)(3) class"; "[t]hus, so long as 'damages will be calculated based on the wages each employee lost due to [defendant]'s unlawful practices,' *Comcast* does not pose a barrier to class certification"); *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 485-86 (C.D. Cal. 2012) ("Statute of limitations defenses—like **damage calculations**, affirmative defenses, and counterclaims—**rarely defeat class certification**.") (emphasis added).

Significantly, just recently, the District Court in *Frlekin v. Apple Inc*., 2015 U.S. Dist.

8

LEXIS 92768, at *1-2 (N.D. Cal. July 16, 2015),[3] granted class certification of a virtually identical situation involving Apple retail store employees having to undergo security checks every time they left the store. Apple maintained policies which are strikingly similar to those of Nike:

> **Employee Package and Bag Searches**
> All personal packages and bags must be checked by a manager or security **before leaving the store.**
> **General Overview**
> All employees, including managers and Market Support employees, are subject to personal package and bag searches. Personal technology must be verified against your Personal Technology Card (see section in this document) during all bag searches. Failure to comply with this policy may lead to disciplinary action, up to and including termination.
> Do Find a Manager or member of the security team (where applicable) to search your bags and packages before leaving the store.

*Id.* (Some emphasis added). Apple also maintained similar bag search requirements, including mandating that employees open up their bags, verifying that products were purchased by comparing them with the employee's receipts, and if questionable items were found, requiring further investigation. *Id.* at *2. Apple argued that individualized inquiries predominated because the way its bag check policy was enforced varied store-to-store, including that managers or third-party security officers could conduct the search, some stores had off-site break rooms where bags could be kept which obviated the need for a bag check, and that the bag check process changed during the class period. *Id.* at *3. In opposing class certification, Apple further argued that not all employees brought bags to work, which also eliminated the need for a bag check. *Id.* at *6. Apple also argued that the bag check policy was not enforced at all of its stores due to managerial discretion. *Id.* at *7. Notwithstanding these purported individualized questions, the Court still granted class certification because the question of whether employees are required to be paid for

---

[3] To the extent that Defendant attempts to cite Judge Alsup's granting of summary judgment in favor of the employer in *Frlekin*, to somehow bar class certification, such an argument would be misplaced. To the contrary, the *Frlekin* case shows that this case is particularly suited for class treatment and that the issues can be decided by summary judgment, as was the case in *Frlekin*. Further, although *Frlekin* can be used as a model upon which to litigate the instant case, in that the parties here can similarly proceed to summary judgment after the class has been certified, the facts in *Frlekin* are far different, such that the summary judgment ruling does not apply in this case. In *Frlekin*, the employer did not have a blanket security check policy, as is the case here. Rather, in *Frlekin*, Apple required employees to undergo security checks only if they brought bags to work. Here, employees must all undergo security checks, regardless of whether they have a bag or not. Thus, although the class certification order and litigation mechanisms utilized in *Frlekin* are useful in guiding this case, Judge Alsup's ultimate order on summary judgment does not apply here.

time undergoing these bag checks presented a common issue: "this order finds that this generic issue overarches the entire controversy." *Id.* The Court further relied on Apple's written policies requiring a bag check every time the employee exited the store: "Apple had a state-wide written policy, which will serve as a common method of proof for all 52 California stores." *Id.*

The District Court reached the same holding in *Kurihara v. Best Buy Co*., 2007 WL 2501698 (N.D. Cal. Aug. 30, 2007). In *Kurihara*, the employer, as in this case, had a policy requiring its hourly employees to undergo supervisor inspections upon entering and exiting the store. *Id.* at *2. The employer claimed that inspections fluctuated from day to day, including that inspections varied manager to manager and that inspections were not even performed in some instances. *Id*. at *2-3. The employer further argued that off-the-clock work was prohibited, which implied that security checks must be performed on-the-clock. *Id.* at *4. The employer also argued that, in any event, such security check time was *de minimis* and, thus, not compensable. Nevertheless, the Court also granted class certification of the security check claim:

> [D]efendant's assertions regarding the failure of its employees to properly implement the company's standard policies do not convince the court that substantial variations exist. Where a plaintiff challenges a well-established company policy, a defendant cannot cite poor management to defend against class certification.
>
> **Finally, Defendants' focus on its asserted *de minimis* defense is a matter of degree rather than kind. At the bottom of the multi-factor *de minimis* inquiry is the simple question of how many hours were worked. This is an issue that defendants would be forced to litigate individually regardless of whether common questions of liability predominated.**
>
> In sum, the individualized inquiries are directed principally toward damages rather than liability.

*Id.* at *10-11 (emphasis added).

The District Court reached the same conclusion in *Cervantez v. Celestica Corp*., 253 F.R.D. 562 (C.D. Cal. 2008). *Cervantez* involved another check-out case. In that case, the Court also found that "there is a common issue of law as to whether the post-shift security line time is compensable," (*Id*. at 571) and noted that:

> Like the plaintiffs in [*Morrillion v. Royal Packing Co*., 22 Cal. 4th 575 (2000)], Plaintiffs are under the control of their employers while in the security line at the end of the shift: they cannot choose to leave the premises without going through the line, nor can they choose to run a personal errand before going through the line.

10

*Id.* at 572; *see also Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 442 (N.D. Cal. 2008) (certifying security check case notwithstanding employer's argument that the amount of time undergoing security check was *de minimis* and varied; "[a]nother practice is to conduct loss-prevention inspections (i.e. security checks for stolen merchandise) on all employees every time they leave the store, such as at the end of their shifts or to take lunch breaks").

It is anticipated that Defendant will argue its de minimis defense as a reason to defeat class certification (as evidenced by its arguments set forth in its Motion to Deny Class Certification). Whether such a defense is viable, case law is clear that such a defense cannot be a reason to defeat class certification. *See Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 260-61 (N.D. Cal. 2015) ("VTA's contention that it can assert 'unique' de minimis defenses against some of the representative's claims is unpersuasive because as previously noted, the de minimis defense can be resolved on a class-wide basis even if the amounts of time for which each representatives and class member seek compensation differ"); *Bibo v. Fed. Exp., Inc.*, No. C 07-2505 TEH, 2009 WL 1068880, at *4 (N.D. Cal. Apr. 21, 2009) ("FedEx also asserts that the state's rule on de minimis work undermines Plaintiffs' legal claim for uncompensated pre- and postliminary activities"; "[t]he merits of whether Plaintiffs' claims are compensable under this law are not an appropriate subject for a class certification motion"); *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 550 (E.D. Cal. 2010) ("Defendants' third argument about individual inquiries is that compensation is not owed for de minimis overtime, and that whether time was de minimis must be calculated on a fact specific basis. The need to determine whether overtime was de minimis does not itself preclude class or collective certification."); *Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK, 2012 WL 1366052, at *20 (C.D. Cal. Apr. 18, 2012), *aff'd* (Sept. 3, 2014) ("[w]ith respect to Defendant's de minimis defense, it can be addressed through representative testimony").

Here, it is undisputed that all of Defendants' California retail store employees were subjected to the very same security check policy as one another, and that the security checks were to be performed in the very manner mandated by Defendants. Specifically, as shown in Defendant's own testimony, as a matter of Defendant's own policy and procedure, all security

11

checks were to be done *__after__* the employee has already clocked out.  Indeed, it is actually not surprising that all of Defendant's declarants who are putative class members also admit to the same – that for each work shift, they were subjected to security checks only after having clocked out, and thus, having the security check performed off-the-clock.  Thus, Plaintiff's and Defendant's evidence in this regard are completely consistent with one another.  The only difference between Plaintiff's and Defendant's positions are whether such security check times are compensable under California law and, if so, what the amount of damages are – neither of which are reasons to deny class certification.

Based thereon, the common question to be litigated in this case is whether such security check time is compensable under California law.  Once that question is answered, class-wide liability and damages can then be determined.

Accordingly, this claim presents an ideal issue for class-wide adjudication, especially given Defendants' undisputed common policy of requiring all of Defendants' employees to undergo bag checks.

### 3.      Representative Plaintiff's Claims are Typical

In *Hanlon*'s permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  It is enough if named Plaintiff and class members share a "common issue of law or fact.'" *California Rural Legal Assistance v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (citations omitted).  Under the low threshold of typicality, all that is required is that each plaintiff has an incentive to prove defendant's liability. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 165 (C.D. Cal. 2002).

Here, typicality is readily satisfied.  The proposed representative Plaintiff seeks recovery based upon the same legal theories and factual circumstances as the Class that he represents.  As shown in both Plaintiff's supporting declaration and deposition testimony, Plaintiff was required to be subjected to off-the-clock security checks during his employment with Defendant.  The claims in the current case rise and fall on the determination of whether employees should have

12

been compensated for time spent undergoing off-the-clock security checks. Based on the same evidence discussed above, Plaintiff and the putative class members were all subjected to the very same common policies and practices.

For this reason, Plaintiff's claims are typical with those of the Class members.

### 4.    The Adequacy Requirement Is Met

To determine whether the class representation meets the standard of Rule 23(a)(4), two questions are asked: "(1) Do the representative Plaintiff[s] and their counsel have any conflicts of interest with other class members, and (2) will the representative Plaintiff and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

### a.    Plaintiff is an Adequate Representative

As established above, Plaintiff shares common interests with the defined Class, has claims typical of class members' claims, and is fully prepared to take all necessary steps to fairly and adequately represent the Class he represents. Declaration of Isaac Rodriguez ("Rodriguez Decl."), ¶¶ 8-9. No conflicts of interests exist and the representative will continue to adequately and vigorously prosecute this action. *Id.* Plaintiff has agreed to abide by all of the necessary duties of a class representative, including assisting counsel in the litigation. *Id.* Accordingly, Plaintiff is an adequate representative.

### b.    Competent Class Counsel

As detailed in their declarations, Plaintiff's Counsel are experienced class action litigators who have litigated many wage and hour class actions and/or have been certified as class counsel in numerous other class actions, particularly wage and hour class actions. (Lee Decl., ¶¶ 7-14; Declaration of Nick Rosenthal ("Rosenthal Decl.") ¶¶ 4-5; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶¶ 3-6; Declaration of William L. Marder ("Marder Decl.") ¶ 5).

Plaintiff's Counsel have diligently litigated this case, and will continue to do so. Plaintiff's Counsel have taken the depositions of Defendant's 30(b)(6) witness, propounded and responded to discovery, and have pursued matters in law and motion as deemed necessary. (Lee Decl. ¶ 13; Hyun Decl. ¶ 8). Plaintiff's Counsel's only relationship with Plaintiff is the attorney-

1   client relationship in this matter.  (Lee Decl. ¶ 14; Hyun Decl. ¶ 9).  Accordingly, Plaintiff's

2   Counsel are adequate and will continue to vigorously prosecute this action on behalf of the class.

3   (Lee Decl. ¶¶ 7-14; Hyun Decl. ¶ 7).

### B.   The Predominance Requirement of Fed. R. Civ. P. 23(b)(3) is Met

5   Rule 23(b)(3) requires two separate inquiries:  (1) do issues common to the class

6   "predominate" over issues unique to individual class members, and (2) is the proposed class

7   action "superior" to other methods available for adjudicating the controversy.  *See* Fed. R. Civ. P.

8   23(b)(3).  Here, the requirements of Rule 23(b)(3) are satisfied.

9   "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

10   cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022 (citation omitted);

11   *see also Avilez v. Pinkerton Gov't Serv*., 286 F.R.D. 450, 466-67 (C.D. Cal. 2012) (explaining

12   that predominance is met if the focus is on the defendant's conduct, even if individualized

13   defenses may apply); *Jimenez v. Allstate Ins. Co*., 2012 WL 1366052, *17-18 (C.D. Cal. 2012);

14   *Otsuka v. Polo Ralph Lauren Corp*., 251 F.R.D. 439, 447 (N.D. Cal. 2008).  In this case, it is

15   undisputed that Defendant has uniform practices and policies which resulted in Labor Code

16   violations.  In other words, the claims are predicated on common off-the-clock security check

17   policies and practices making Plaintiff's claims ideally suited for class action treatment.

18   This undisputed evidence shows that Defendant's operations were standardized as far as

19   security checks – all employees had to undergo them off-the-clock.  Thus, Plaintiff's claims are

20   ideally suited for class treatment.  *See, e.g.*, *Abdullah*, 731 F.3d at 966-67 (holding that common

21   questions predominated in claim for Labor Code violations because liability and damages could

22   be adjudicated by reliance on the employer's records); *Leyva v. Medline Indus. Inc.*, 716 F.3d

23   510, 513-14 (9th Cir. 2013) (same); *McKenzie v. Federal Exp. Corp*., 275 F.R.D. 290, 300 (C.D.

24   Cal. 2011) (same).[1]

[1]   California law similarly holds as such.  *See, e.g.*, *Daar v. Yellow Cab Co*., 67 Cal. 2d 695,
713-14 (1967) (holding that class certification was appropriate where claim could be adjudicated
through the employer's own payroll records); *Faulkinbury v. Boyd & Assocs., Inc*., 216 Cal. App.
4th 220, 240 (2013) (same); *Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129,
(2012) ("Plaintiffs counter that this issue would not be a predominant issue in the litigation
because it is a simple task to calculate the damages based on the payroll records that have been
produced by Networkers.  We agree."); *Ghazaryan v. Diva Limousine, Ltd*., 169 Cal. App. 4th
1524, 1532 (2008) (same); *Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121, 136-37 (holding

14

Here, Defendant has openly represented that there are over 6,242 individuals who were subject to the security check policy at issue. Thus, the only question that needs to be answered in order to determine liability for the Class is whether the time spent by employees waiting for and submitting to security checks should have been compensated. If the time is not compensable, then Plaintiff and the Class have no claim. However, if the time in question is compensable, then Plaintiff and the Class are entitled to an award.

### C.    A Class Action is the Superior Method for Adjudication

Class treatment is clearly superior to any other method of resolving Plaintiff's claims. *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004).

Because Plaintiff's claims are based on common policies and practices, these claims can be most efficiently litigated on a class-wide basis. The alternative would be the unrealistic filing of hundreds, or even thousands, of individual claims, posing the serious disadvantages pointed out by the *Sav-On* court. Because the putative class members are hourly employees, with relatively modest individual claims and limited resources, there is a strong likelihood that individual actions would never be brought. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*, 244 F.3d 1152, 1163 (9th Cir. 2001) (superiority requirement met where class members would recover, at most, about $1,330). Moreover, many class members might not bring individual actions out of fear of retaliation.[2] Finally, this action is manageable and well-suited for class certification where Defendant's own payroll records, including dates of employment and rates of pay, can be used to show the violations and measure damages.

The factors discussed above support a finding of superiority pursuant to Rule 23(b)(3), and there are no factors weighing against it, as class members have no adverse individual interests.

## V.    A CLASS-WIDE TRIAL IS MANAGEABLE

"The amount of damages is invariably an individual question and does not defeat class

---

that the employer's liability involved a question of law suited for class treatment and that damages could be calculated by reviewing employer's records.
[2] *See O'Donnell v. TD Ameritrade, Inc.*, 2008 U.S. Dist. LEXIS 49829, at *11 (S.D. Cal. 2008) ("federal courts have widely recognized that fear of retaliation for individual suits against an employer is a justification for class certification in the arena of employment litigation") (emphasis in original).

15

1   action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  Here, the parties can

2   file cross motions for summary judgment to decide the issue of whether Defendant's security

3   checks should be compensable under California law.  If this Court rules in Defendant's favor,

4   then this case is over.  If this Court rules in Plaintiff's favor, however, the parties can proceed to

5   the damage phase, in which the parties can agree to a representative sample to extrapolate to the

6   class.  *Jimenez*, 2012 WL 1366052, at *20.

7   **VI.    CONCLUSION**

8          For the reasons stated above, Plaintiff's Motion for Class Certification should be granted.

9

10  Dated: November 13, 2015                     DIVERSITY LAW GROUP, P.C.

11

12                                          By:/s/ Larry W. Lee
                                               LARRY W. LEE
13                                             NICHOLAS ROSENTHAL
                                               Attorneys for Plaintiff and the Class

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**