Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Kristen Agnew (State Bar No. 247656)
kagnew@diversitylaw.com
Nicholas Rosenthal (State Bar No. 268297)
nrosenthal@diversitylaw.com
Max W. Gavron (State Bar No. 291697)
mgavron@diversitylaw.com
Kwanporn "Mai" Tulyathan (State Bar No. 316704)
ktulyathan@diversitylaw.com
**DIVERSITY LAW GROUP, A Professional Corporation**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Certified Class

*[ADDITIONAL COUNSEL ON THE NEXT PAGE]*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC RODRIGUEZ, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NIKE RETAIL SERVICES, INC., an Oregon corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 5:14-CV-1508 BLF<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:         September 30, 2021<br>Time:        9:00 a.m.<br>Courtroom:  3, 5th Floor |

1

1  William L. Marder (State Bar No. 170131)
2  bill@polarislawgroup.com
   **Polaris Law Group**
3  501 San Benito Street, Suite 200
   Hollister, CA 95023
4  Tel: (831) 531-4214
5  Fax: (831) 634-0333

6  Dennis S. Hyun (State Bar No. 224240)
   dhyun@hyunlegal.com
7  **HYUN LEGAL, APC**
   515 S. Figueroa St., Suite 1250
8  Los Angeles, CA 90071
   (213) 488-6555
9  (213) 488-6554 facsimile

10 Attorneys for Plaintiff and the Certified Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2

    **PLEASE TAKE NOTICE** that on September 30, 2021, at 9:00 a.m., or as soon

3

thereafter as the matter may be heard in Courtroom 3 of the United States District Court for the

4

Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA

5

95113, before the Honorable Beth Labson Freeman, Plaintiff Isaac Rodriguez ("Plaintiff") will

6

and hereby does move the Court for preliminary approval of the proposed class action settlement.

7

Specifically, Plaintiff respectfully requests that the Court:  (1) grant preliminary approval for the

8

proposed class action settlement; (2) grant certification of the proposed Settlement Class, for

9

settlement purposes only, comprised of all current and former non-exempt/hourly retail store

10

employees of Defendant who worked in California at any time during the period from February

11

25, 2010, through and including November 15, 2019; (3) authorize the mailing of the proposed

12

notice to the class of the settlement; and (4) schedule a "fairness hearing," i.e., a hearing on the

final approval of the settlement.

13

    Plaintiff makes this unopposed motion on the grounds that the proposed settlement is

14

within the range of possible final approval, and notice should, therefore, be provided to the class.

15

This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class

16

Action Settlement, the attached Memorandum of Points and Authorities in Support, the

17

Declarations of Larry W. Lee, Kristen M. Agnew, Nicholas Rosenthal, Max W. Gavron, Mai

18

Tulyathan, Dennis S. Hyun, William L. Marder, and Isaac Rodriguez filed herewith, the Class

19

Action Settlement Agreement filed herewith, any oral argument of counsel, the complete files and

20

records in the above-captioned matter, and such additional matters as the Court may consider.

21

22

Dated: April 23, 2021                DIVERSITY LAW GROUP, P.C.

23

24

                        By:   /s/ Larry W. Lee

25

                           Larry W. Lee
                           Attorneys for Plaintiff and the Class

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

1

## TABLE OF CONTENTS

2

**Page**

3    I.   INTRODUCTION AND SUMMARY OF AGREEMENT .................................................. 7

4    A.   Factual Allegations. ..................................................................................................... 7

5    B.   Procedural Background. ............................................................................................... 7

6       1.   Summary of the Litigation. ..................................................................................... 7

7       2.   Summary of Investigation and Discovery. .............................................................. 9

8    C.   Summary of the Current Settlement. .......................................................................... 10

9    D.   The Settlement is Fair, Reasonable, and Adequate. .................................................... 12

10   II.   LEGAL ANALYSIS ....................................................................................................... 13

11   A.   The Class at Issue and the Settlement Fund. .............................................................. 13

12   B.   Two-Step Approval Process. ...................................................................................... 13

13   C.   The Standard for Preliminary Approval. .................................................................... 14

14   D.   The Court Has Already Certified the Class and Therefore Should Certify the

Settlement Class for the Same Reasons ...................................................................................... 15

15   E.   The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion. 16

16      1.   The Settlement May be Presumed Fair and Reasonable. ......................................... 16

17       a.   Experience of Class Counsel. ............................................................................... 18

18       b.   Investigation and Discovery Prior to Settlement. ................................................. 18

19      2.   The Settlement is Fair, Reasonable, and Adequate. ............................................... 19

20       a.   Risks of Proceeding with Trial and Any Appeals. ................................................ 20

21       b.   The Settlement is Within the Range of Reasonableness. ....................................... 20

22       c.   The Complexity, Expense, and Likely Duration of Continued Litigation Against

the Settling Defendant Favors Approval. ................................................................................... 22

23       d.   Non-Admission of Liability by Defendant. .......................................................... 22

24   F.   The Notice to be Given is the Best Practicable. ......................................................... 23

25   G.   Attorney's Fees, Costs, and Service Award to Plaintiff. ............................................ 23

26   H.   Settlement Administrator. .......................................................................................... 24

27   I.   Notice Under The Class Action Fairness Act ("CAFA"). ........................................... 25

28

3

**III.   CONCLUSION**................................................................................................................ **25**

4

# TABLE OF AUTHORITIES

**Page(s)**

**State Cases**

*Troester v. Starbucks Corp.*, 421 P.3d 1114 (Cal. 2018) .................................................................. 8

**Statutes**

28 U.S.C. § 1715 ................................................................................................................................ 25

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ......................................................................................... 8

California Civil Code § 1542 ............................................................................................................ 24

Labor Code § 1194 ............................................................................................................................. 8

Labor Code § 1197 ............................................................................................................................. 8

Labor Code § 510 ............................................................................................................................... 8

**Other Authorities**

4 Conte & Newberg, *Newberg on Class Actions*, § 11.26 (4th ed. 2010) ............................... 14, 15

4 Conte & Newberg, *Newberg on Class Actions*, § 11.41 ............................................................. 22

4 Conte & Newberg, *Newberg on Class Actions*, § 11.45 ............................................................. 21

4 Conte & Newberg, *Newberg on Class Actions*, § 11.47 ............................................................. 17

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3d ed. 2010) ........................... 14

Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632 ................................. 13, 14, 20

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................................. 16

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................... 23

Fed. R. Civ. P. 23(e)(B) .................................................................................................................... 23

Fed. R. Civ. P. 23(a) ......................................................................................................................... 13

Fed. R. Civ. P. 23(b) ......................................................................................................................... 13

Fed. R. Civ. P. 23(b)(3) .................................................................................................................... 22

**Federal Cases**

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979) .............................................. 20

*Frlekin v. Apple, Inc.* 979 F.3d 639, 643-44 (9th Cir. Sept. 2, 2020) ........................................... 20

5

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)..................................................................... 20, 22

*Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990) ................................................ 17

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ........................... 17

*In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980)........................................ 16

*In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), 2004 WL 1724980, at *10

(S.D.N.Y. July 30, 2004) .......................................................................................................... 16

*In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ..................................................... 19

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) .................... 16

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co*., 834 F.2d 677, 682 (7th Cir.

1987) ......................................................................................................................................... 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004)..... 17, 22

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625

(9th Cir. 1982)................................................................................................................ 14, 15, 22

*Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp*., 323 F. Supp. 364, 372

(E.D. Pa. 1970).......................................................................................................................... 14

*Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)................................................................. 16

*Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978). 17

*Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979)........................................................ 17

*Util. Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989) ........... 14, 15

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)............................................ 22

*Wilkerson v. Martin Marietta Corp*., 171 F.R.D. 273, 284 (D. Colo. 1997) ................................ 15

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ....................................................... 16

*Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971) ................................................................... 22

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

I.      **INTRODUCTION AND SUMMARY OF AGREEMENT**

3

Plaintiff Isaac Rodriguez ("Plaintiff") respectfully requests that the Court grant

4

preliminary approval of the Class Action Settlement (hereinafter referred to as "Settlement

5

Agreement") that he has reached in the above-captioned matter with Defendant Nike Retail

6

Services, Inc. ("Defendant" or "Nike") (Plaintiff and Defendant collectively referred to as the

7

"Parties").

8

A.      **Factual Allegations.**

9

Plaintiff was hired by Defendant to work as a non-exempt employee at Defendant's retail

10

outlet store located in Gilroy, California.  (Declaration of Isaac Rodriguez ("Rodriguez Decl.") ¶

11

2.)  Plaintiff was employed by Defendant until in or about January 2012.  (*Id*.)

12

In this lawsuit, Plaintiff alleges that, as with all other non-exempt retail store employees of

13

Defendant in the State of California, he was instructed and required to undergo off-the-clock

14

security checks and/or visual inspections (in the event that he did was not carrying a bag) before

15

exiting the store at any time.  Plaintiff claims that although said security checks and visual

16

inspections were required after clocking out and before leaving the store, Defendant did not pay

17

Plaintiff and other non-exempt employees any applicable minimum and overtime wages in

18

connection with the time spent waiting for security checks and visual inspections, and the time

spent undergoing said inspections.

19

On the other hand, Defendant denies that it has engaged in any alleged unlawful conduct

20

and maintains that it has complied with California law.  (Settlement Agreement § 1.2.)  In this

21

regard, Defendant maintains that its security checks and visual inspections conducted at its retail

22

stores are compliant with California law, such that it properly paid its employees for all wages

23

owed in all respects.

24

B.      **Procedural Background.**

25

1.      **Summary of the Litigation.**

26

On February 25, 2014, Plaintiff filed a class action complaint against Defendant in the

27

Santa Clara Superior Court, on behalf of himself and a proposed class consisting of "all current

28

and former non-exempt retail store employees of Defendants who worked in California during the

7

period from February 25, 2010 to the present." On April 1, 2014, the Action was removed to the United States District Court for the Northern District of California, Case No. 5:14-cv-1508-BLF. Dkt. No. 1. Plaintiff subsequently filed a First Amended Complaint on December 8, 2014, alleging the following causes of action: (1) violation of Cal. Labor Code §§ 1194 and 1197; (2) violation of Cal. Labor Code §§ 510 and 1194; and (3) violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*. Dkt. No. 27. Plaintiff also sought waiting time penalties as part of his prayer for relief. *Id*.

On August 19, 2016, the Court granted Plaintiff's Motion for Class Certification and denied Defendant's Motion to Deny Class Certification as moot. *See* Dkt. No. 69. The Court certified the following class: "All current and former non-exempt retail store employees of Defendant who worked in California during the period from February 25, 2010 to the present." *Id*. at p. 19. In granting class certification, the Court found that common questions of law and fact predominated:

> Rodriguez is not asking for compensation for all the time between when an employee clocks out and when she walks out the front door. He is asking for compensation only for time spent waiting for an exit inspection or being inspected. All employees have to be visually inspected before they can leave the store, so no individualized inquiries are required.

*Id*. at p. 11.

Defendant subsequently moved for summary judgment against the certified class based on the *de minimis* doctrine, arguing that its average inspection only takes seconds and thus is *de minimis* and not compensable under the law. Dkt. No. 84. On September 12, 2017, the Court granted Defendant's Motion for Summary Judgment. Dkt. No. 100. Plaintiff appealed the ruling to the Ninth Circuit. After full briefing and oral argument, on June 28, 2019, the Ninth Circuit issued its opinion in *Rodriguez v. Nike Retail Servs., Inc*., 928 F.3d 810, 818 (9th Cir. 2019), reversing the District Court's grant of the Defendant's motion for summary judgment based on *Troester v. Starbucks Corp.*, 421 P.3d 1114 (Cal. 2018), which held that the federal *de minimis* doctrine does not apply to wage and hour claims brought under California law.

Following remand from the Ninth Circuit, the Parties stipulated to amend the class certification order to expand class membership to November 15, 2019. Dkt. No. 135. As

Defendant changed its security check policy to have security inspections performed on the clock effective November 15, 2019, to the Parties agreed to cut off class membership as of that date. Thus, pursuant to the Parties' stipulation, the certified class was expanded to include "all current and former non-exempt retail store employees of Defendant who worked in California during the period from February 25, 2010 to November 15, 2019."  Dkt. No. 136.

### 2. Summary of Investigation and Discovery.

With respect to investigation and discovery, Plaintiff conducted investigation of the facts surrounding the claims in this action before filing suit, as well as conducted extensive discovery during the course of litigating and prosecuting this case. (Declaration of Larry W. Lee ("Lee Decl.") at ¶ 3.)  The Parties propounded and responded to multiple rounds of written discovery, including interrogatories and requests for production of documents. (*Id*. at ¶ 3.)  In connection with written discovery, Plaintiff also obtained and reviewed Defendant's document production, including policy documents; class time and payroll records; work schedules; retail store information, pictures, and videos; and class contact information.  (*Id*. at ¶ 3.)  Further, to obtain proper discovery responses, Plaintiff was forced to file letter briefs with the Magistrate and oppose Defendant's request for this Court to review the Magistrate's discovery orders.

In addition to written discovery, the Parties took numerous depositions.  Plaintiff's counsel defended Plaintiff's deposition and took the depositions of Defendant's FRCP 30(b)(6) Corporate Representatives on various topics that impacted class certification and liability.  (Lee Decl. at ¶ 4.)  Additionally, over the course of litigation, Plaintiff also took over 25 depositions, including the depositions of Defendant's managerial employees and Defendant's experts and statistical analysts who Defendant engaged to perform video observations and in-person observations in connection with its time and motion study.  (*Id*. at ¶ 4.)  The Parties have also conducted expert discovery, including deposing Plaintiff's expert—Dr. Brian Kriegler, Ph.D. (*Id*. at ¶ 4.)

In sum, as evidenced from the docket, this case has been substantively and vigorously litigated by both Parties.  The Parties have also conducted extensive investigation and discovery, including formal written discovery; taking and defending numerous depositions; exchanging, reviewing and analyzing class data and documents; and conducting expert discovery. (Lee Decl.

1     at ¶ 8.)

2             **C.**      **Summary of the Current Settlement.**

3            The Parties initially attempted to settle this case by completing mediation with the Hon.

4 Jeffrey Winikow (ret.) on July 11, 2017. (Lee Decl. at ¶ 9.) The Parties did not settle and

5 continued to litigate for several more years. (*Id.*) On November 24, 2020, after years of litigation

6 before this Court and the Ninth Circuit, the Parties participated in mediation with experienced

7 wage-and-hour class action mediator Michael Loeb, Esq. (Lee Decl. at ¶ 10.) After a full day of

8 negotiations, the Parties were unable to settle. Nevertheless, through subsequent negotiations

9 facilitated by the mediator, the Parties have reached the current settlement by accepting Mr.

10 Loeb's mediator's proposal, the terms of which are fully detailed in the Settlement Agreement.

11 (*Id.*, Ex. A.)

12           The Settlement Agreement provides for a total settlement sum of Eight Million Two

13 Hundred Fifty Thousand Dollars ($8,250,000.00), inclusive of payments to Settlement Class

14 Members, payment of the Service Award to Plaintiff, Class Counsel fees and costs, and

Settlement Administrator Expenses. (Settlement Agreement at § 4.1.)

15           Pursuant to the terms of the Settlement Agreement, the Net Settlement Amount (after

16 deduction of attorneys' fees in the amount of up to Two Million Seven Hundred Fifty Thousand

17 Dollars ($2,750,000.00), costs up to Two Hundred Fifty Thousand Dollars ($250,000.00), the

18 Service Award in the amount of up to Fifteen Thousand Dollars ($15,000.00), and costs of

19 settlement administration in the amount of approximately Sixty-Nine Thousand Seven Hundred

20 Fifty Dollars ($69,750.00)) is approximately $5,165,250.00 (Settlement Agreement at §§ 4.1, 5.2;

21 Lee Decl. at ¶ 13.) As provided in the Settlement Agreement, 80 percent of Individual Settlement

22 Payments will be allocated as penalties and will not be subject to withholdings, 10 percent of

23 Individual Settlement Payments will be considered wages and will be subject to all applicable

24 withholdings, and 10 percent of Individual Settlement Payments will be allocated to interest and

25 will not be subject to withholdings. (Settlement Agreement § 5.6.) In addition to the total

26 settlement sum, Defendant has also agreed to be separately responsible for its employer-side

27 share of payroll taxes for the wage portions of the Individual Settlement Payments. (*Id.* at §§

28 2.32, 4.1.)

10

**Significantly, this settlement is non-reversionary and does <u>not</u> involve the use of claim forms**.  (Settlement Agreement §§ 5.5, 7.1.)  In other words, none of the unclaimed settlement funds will revert back to Defendant and a Settlement Class Member need not do anything to receive his or her share.  Instead, the Settlement Class Member will automatically receive his or her share of the settlement funds so long as he or she does not opt-out from the settlement.  Moreover, the Net Settlement Amount available to Settlement Class Members will proportionately increase as the result of any opt-outs.  (Settlement Agreement §§ 5.4-5.5.)  Thus, each Class Member's settlement amount could be further increased depending on the number of opt-outs. (Lee Decl. at ¶ 15.)

Additionally, the remaining monies from uncashed checks will be redistributed to those Settlement Class Members who cashed their checks from the first distribution, and any remaining funds thereafter shall be paid to the *cy pres* beneficiary of the Settlement, Legal Aid At Work. (Settlement Agreement § 10.5.)  Legal Aid at Work is a non-profit legal services organization that provides legal assistance to low-income individuals for issues related to employment, including any wage and hour issues, like those presented in this case.  (Lee Decl. at ¶ 16.)  The Parties and their respective counsel do not have any relationship with Legal Aid at Work. (*Id.* at ¶ 16; Declaration of Dennis Hyun ("Hyun Decl.") at ¶ 11; Declaration of Kristen M. Agnew ("Agnew Decl.") at ¶ 10; Declaration of Nicholas Rosenthal ("Rosenthal Decl.") at ¶ 6; Declaration of Max Gavron ("Gavron Decl.") at ¶ 11; Declaration of Mai Tulyathan ("Tulyathan Decl.") at ¶ 10; Declaration of William L. Marder ("Marder Decl.") at ¶ 15.)

The Settlement Class consists of all current and former non-exempt/hourly retail store employees of Defendant who worked in California at any time from February 25, 2010 through and including November 15, 2019, which is the same class this Court has already certified. (Settlement Agreement § 2.28.)  The identities of class members can be ascertained from Defendant's payroll records.  Based upon Defendant's records, the estimated number of unique Settlement Class Members is approximately 16,658.  (*Id.*)  Settlement Class Members also have the right to opt-out and exclude themselves from the settlement, and have 45 days after the initial mailing of the Class Notice to do so. (*Id.* at §§ 2.7, VII, and VIII.)

//

11

1

**D.      The Settlement is Fair, Reasonable, and Adequate.**

2

Based on their own respective independent investigations and evaluations, the Parties and

3

their respective counsel are of the opinion that settlement for the consideration and on the terms

4

set forth in their Settlement Agreement is fair, reasonable, and adequate and is in the best interests

5

of the class and the Defendant in light of all known facts and circumstances and the expenses and

6

risks inherent in litigation.  (Lee Decl. at ¶ 20; Hyun Decl. at ¶¶ 7-9; Marder Decl. at ¶¶ 12-13;

7

Agnew Decl. at ¶ 8; Rosenthal Decl. at ¶ 4; Gavron Decl. at ¶ 9; Tulyathan Decl. at ¶ 9.)

8

Based on the approximate 16,658 Settlement Class Members, each Settlement Class

9

Member will receive a raw average of approximately $320.07[1], after deduction for attorneys'

10

fees, class representative enhancement payment, settlement administration costs, and litigation

11

costs. (Lee Decl. at ¶ 14.)  Each Settlement Class Member who does not opt out ("Remaining

Settlement Class Member") may receive a settlement amount that is more or less than this raw

12

average, depending on each respective class member's number of Shifts Worked (the total

13

number of shifts a Settlement Class Member worked for Defendant as a non-exempt employee

14

during February 25, 2010 through and including November 15, 2019), and the number of opt-outs

15

received.  (*Id.*; Settlement Agreement § 2.31, 5.4.)

16

Each Remaining Settlement Class Member will be paid a base payment of $10,00, plus a

17

*pro rata* share calculated based on the number of Shifts Worked.  (*Id.* at § 5.4.)  To calculate each

18

Remaining Settlement Class Member's *pro rata* share, the number of Remaining Settlement Class

19

Members who do not opt out will first be multiplied by $10.00 and the resulting amount shall be

20

subtracted from the Net Settlement amount, after which the remaining amount shall be deemed as

21

the "Shifts Worked Settlement Amount."  The Settlement Administrator will then total the Shifts

22

Worked of all Remaining Settlement Class Members ("Total Shifts Worked").  Each Remaining

23

Settlement Class Member's Shifts Worked will then be divided by the Total Shifts Worked and

24

multiplied against the Shifts Worked Settlement Amount.  Finally, the resulting amount will be

25

added to the base payment of $10.00 to determine each Remaining Settlement Class Member's

26

Individual Settlement Payment.  (*Id.*)

27

------

28

[1] Given that the Settlement Agreement contemplates a base payment of $10.00 to all Settlement Class Members who do not opt out, this raw average amount of $320.07 includes the $10.00 base payment. (*See* Lee Decl. at ¶ 14.)

1   **II.     LEGAL ANALYSIS**

2         **A.     The Class at Issue and the Settlement Fund.**

3         Defendant has agreed to collect information regarding the identity of the members of the

4   Settlement Class and the number of Shifts Worked.  (Settlement Agreement §§ 2.3, 6.1.)  As set

5   forth in the Settlement Agreement, the Settlement Class includes all current and former non-

6   exempt/hourly retail store employees of Defendant who worked in California at any time from

7   February 25, 2010, through and including November 15, 2019.  (Settlement Agreement § 2.28.)

8   Again, the Parties have agreed that the settlement is non-reversionary and will proceed without

9   the use of claim forms. (*Id.* at §§ 5.5, 7.1.)

10         **B.     Two-Step Approval Process.**

11         Any settlement of class litigation must be reviewed and approved by the Court. This is

12   done in two steps: (1) an early (preliminary) review by the court, and (2) a final review and

13   approval by the court after notice has been distributed to the class members for their comment or

14   objections.  The Manual for Complex Litigation, Fourth states:

15                Review of a proposed class action settlement generally involves
                 two hearings. First, counsel submit the proposed terms of
16               settlement and the judge makes a preliminary fairness evaluation. In
                 some cases, this initial evaluation can be made on the basis of
17               information already known, supplemented as necessary by briefs,
                 motions, or informal presentations by parties. If the case is
18               presented for both class certification and settlement approval, the
                 certification hearing and preliminary fairness evaluation can usually
19               be combined. The judge should make a preliminary determination
                 that the proposed class satisfies the criteria set out in Rule 23(a) and
20               at least one of the subsections of Rule 23(b). If there is a need for
                 subclasses, the judge must define them and appoint counsel to
21               represent them. The judge must make a preliminary determination
                 on the fairness, reasonableness, and adequacy of the settlement
22               terms and must direct the preparation of notice of the certification,
                 proposed settlement, and date of the final fairness hearing.

23   Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632.

24         Thus, the preliminary approval by the trial court is simply a conditional finding that the

25   settlement appears to be within the range of acceptable settlements.  As Professor Newberg

26   comments:

27               The strength of the findings made by a judge at a preliminary
                 hearing or conference concerning a tentative settlement proposal
28               may vary. The court may find that the settlement proposal contains

                                                     13

---

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

1
2

> some merit, is within the range of reasonableness required for a
> settlement offer, or is presumptively valid subject only to any
> objections that may be raised at a final hearing.

3

4

4 Conte & Newberg, *Newberg on Class Actions*, § 11.26 (4th ed. 2010).  Accordingly, a court

5

should grant preliminary approval of a class action settlement where it is within the "range of

6

reasonableness."  Here, the Parties have reached such an agreement that is fair, reasonable, and

adequate, and have submitted it to the Court in connection with this filing.

7

     **C.**     **The Standard for Preliminary Approval.**

8

     As a matter of public policy, settlement is a strongly-favored method for resolving

9

disputes.  *Util. Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989).

10

This is especially true in complex class actions such as this case.  *Officers for Justice v. Civil*

11

*Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

12

     Preliminary approval does not require the Court to make a final determination that the

13

settlement is fair, reasonable, and adequate.  Rather, that decision is made only at the final

14

approval stage, after notice of the settlement has been given to the class members and they have

15

had an opportunity to voice their views of the settlement or to exclude themselves from the

16

settlement.  5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3d ed. 2010).  In

17

considering the settlement, the Court need not reach any ultimate conclusions on the issues of fact

18

and law which underlie the merits of the dispute and need not engage in a trial on the merits.

19

*Officers for Justice*, 688 F.2d at 625.  Preliminary approval is merely the prerequisite to giving

20

notice so that "the proposed settlement...may be submitted to members of the prospective class

21

for their acceptance or rejection."  *Philadelphia Hous. Auth. v. Am. Radiator & Standard.*

22

*Sanitary Corp*., 323 F. Supp. 364, 372 (E.D. Pa. 1970).

23

     "The judge should raise questions at the preliminary hearing and perhaps seek an

24

independent review if there are reservations about the settlement, such as unduly preferential

25

treatment of class representatives or segments of the class, inadequate compensation or harms to

26

the classes, the need for subclasses, or excessive compensation for attorneys."  MCL § 21.633.

27

Here, the proposed settlement does not pose such issues.  This was a highly-contentious litigation

28

with the Parties each being represented by highly-competent counsel.  As discussed above and in

14

the declarations submitted herewith, the Parties engaged in substantial motion practice, including class certification, summary judgment, and appellate briefing and argument before the Ninth Circuit, and conducted thorough investigations related to the claims and defenses alleged in this case.  Further, the proposed settlement was reached after Plaintiff obtained class certification, and obtained with the assistance of an experienced mediator and after substantial arm's-length negotiations between the Parties.

As detailed herein, the proposed settlement satisfies the standard for preliminary approval as it is well within the range of possible approval and there are no grounds to doubt its fairness. The Parties' attorneys have extensive experience in employment law, particularly wage and hour litigation, and reached settlement only after two mediations and extensive arm's-length negotiations subsequent to the mediation.

**D.      The Court Has Already Certified the Class and Therefore Should Certify the Settlement Class for the Same Reasons.**

The Parties also may, at the preliminary approval stage, request that the court provisionally approve certification of the class—conditional upon final approval of the settlement.  Settlements are highly favored, particularly in class actions.  *Util. Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice*, 688 F.2d at 625; *Wilkerson v. Martin Marietta Corp*., 171 F.R.D. 273, 284 (D. Colo. 1997).  Plaintiff requests such provisional approval at the preliminary approval hearing:

> The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal…may be set out in conditional orders granting tentative approval to the various items submitted to the court. Three basic rulings are often conditionally entered at this preliminary hearing. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.

4 Newberg on Class Actions at § 11.26.

Here, on August 19, 2016, the Court certified a class of "[a]ll current and former non-exempt retail store employees of Defendant who worked in California during the period from February 25, 2010 to the present."  Dkt. No. 69.  The Court certified Plaintiff's class claims predicated on Defendant's security inspection policy.  *Id*.  On July 9, 2020, the Court approved

15

1   the Parties' stipulation to amend the Court's class certification order to expand class membership

2   to include "all current and former non-exempt retail store employees of Defendant who worked in

3   California during the period from February 25, 2010 to November 15, 2019." Dkt. No. 136. The

4   change in the time period of class membership is reflective of Defendant's change in its security

5   check policy effective November 15, 2019. Pursuant to the Settlement Agreement, the Settlement

6   Class is defined as the same class this Court has already certified.

7           In light of the fact that the Court previously certified an identical litigation class in this

8   case, the Parties agree that certification of the proposed Settlement Class is appropriate for

9   settlement purposes. Here, the same issues regarding Defendant's policies and practices, legal

10  arguments surrounding the elements of Fed. R. Civ. P. 23, class data, and analyses are implicated

11  by the certified class and the Settlement Class, with the exception of the Settlement Class period.

12  Thus, for purposes of this Motion, the Court need not re-engage in an analysis of whether the

13  Settlement Class can be certified for settlement purposes, given that the Court has already found

14  that the elements of Rule 23 have been established.

15          Accordingly, the Parties respectfully request that the Court certify the Settlement Class for

16  settlement purposes as defined in the Settlement Agreement.

17          **E.      The Settlement is Fair and Reasonable and Not the Result of Fraud or
                      Collusion.**

18                  **1.      The Settlement May be Presumed Fair and Reasonable.**

19          There is a presumption that a proposed settlement is fair and reasonable when it is the

20  result of arm's-length negotiations. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)

21  ("The court should defer to the judgment of experienced counsel who has competently evaluated

22  the strength of his proofs"); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), 2004

23  WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the

24  product of arm's length negotiations conducted by experienced counsel knowledgeable in

25  complex class litigation, the Settlement will enjoy a presumption of fairness'") (Citations

26  omitted); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001)

27  ("When a settlement is the result of extensive negotiations by experienced counsel, the Court

28  should presume it is fair").

Additionally, Courts presume the absence of fraud or collusion in the negotiation of settlement unless evidence to the contrary is offered.  *See Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co*., 834 F.2d 677, 682 (7th Cir. 1987); *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979); *Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978).

While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly where, as here, they have already obtained class certification, been involved in extensive litigation, extensive informal investigation and formal written discovery, depositions, and expert discovery, appear to be competent, and have experience with this type of litigation.  *Newberg on Class Actions* at § 11.47; *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 528 ("So long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement…and 'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (citations omitted); *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement"; pre-certification class action settlements should be scrutinized for "clear sailing" provisions "providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel **excessive fees** and costs in exchange for counsel accepting an unfair settlement on behalf of the class'") (emphasis added).  Here, this settlement was reached only after extensive litigation and class certification, as well as briefing and appellate proceedings regarding Defendant's motion for summary judgment.  Thus, Plaintiff's counsel zealously litigated this case on behalf of the class.

//

17

### a.   Experience of Class Counsel.

Here, counsel for Parties have a great deal of experience in wage and hour class action litigation.  Plaintiff's counsel has been approved as class counsel in a number of other wage/hour class actions.  (Lee Decl. at ¶¶ 24-30; Hyun Decl. at ¶¶ 3-6; Agnew Decl. at ¶ 6; Rosenthal Decl. at ¶ 3; Gavron Decl. at ¶ 6; Tulyathan Decl. at ¶¶ 2-6; Marder Decl. at ¶¶ 3-11.)  Moreover, Plaintiff's counsel conducted an extensive investigation and discovery of the factual allegations involved in this case prior to filing suit and throughout the course of litigation.  Thus, based upon such experience and knowledge of the current case, Plaintiff's counsel believe that the current Settlement is fair, reasonable and adequate.  (Lee Decl. at ¶ 9-20; Hyun Decl. at ¶¶ 7-9; Agnew Decl. at ¶ 8; Rosenthal Decl. at ¶ 4; Gavron Decl. at ¶ 9; Tulyathan Decl. at ¶¶ 7-9; Marder Decl. at ¶¶ 12-13.)  Pursuant to the Northern District Procedural Guidelines for Class Settlements, information regarding Plaintiff's counsel's past comparable class settlement is detailed in their declarations. (*See* Lee Decl. at ¶ 30.)

### b.   Investigation and Discovery Prior to Settlement.

As mentioned, Class Counsel conducted significant investigation and discovery in furtherance of the prosecution of this action.  (Lee Decl. at ¶¶ 3-8.)  This investigation and discovery included, among other things: (a) inspection and analysis of thousands of pages of documents, class time and payroll records, and in-store videos, produced by Defendant throughout the course of litigation and in connection with mediation; (b) retaining a legal investigator to conduct field investigations at multiple Nike retail locations and reviewing the results thereof; (c) conducting over 15 depositions of Defendant's experts and statistical analysts who Defendant engaged to perform video observations and in-person observations in connection with its time and motion study; (d) conducting multiple depositions of Defendant's FRCP 30(b)(6) Corporate Representatives, on a myriad of topics relating to the underlying claims; (e) subpoenaing and taking depositions of ten of Defendant's managerial employees; (f) retaining an expert, Dr. Kriegler, to assess damages and penalties; (g) conducting expert discovery, including defending Dr. Kriegler's deposition; and (h) extensively researching and litigating the substantive issues in this case at class certification, summary judgment, and on appeal with the Ninth Circuit, and to further ready the case for trial.  (*Id.*)

18

To evaluate the damages and penalties, Plaintiff reviewed time and payroll data and class list for the entire class, which was provided to Plaintiff through formal discovery and litigation. (Lee Decl. at ¶ 6.)  In connection with mediation, Plaintiff was provided with updated time and payroll data for the entire class, including data regarding the number of class members, number of shifts worked, number of employees who have separated from employment, and the hourly rates of pay for class members.  (*Id*. at ¶ 6.)  Plaintiff then analyzed and calculated maximum exposure of damages and penalties applicable to the entire class for the class period.  (*Id*. at ¶ 6.) Based thereon, the following represents Plaintiff's analysis of Defendant's potential liability:

For unpaid wages, assuming a conservative one minute per shift of unpaid work time, class members were owed 115,020 hours of unpaid work.  Based on an average pay rate of class members of $12.56, Plaintiff calculated the maximum exposure of unpaid wages to the class to be approximately $1,444,651.20.  (Lee Decl. at ¶ 7.)  In addition, Plaintiff alleged that Defendant faces significant liability for waiting time penalties arising from the off-the-clock security check process for a maximum amount of approximately $48,251,952.00.  (*Id*. at ¶ 7.)  Thus, had Plaintiff fully prevailed on the certified class claims, the maximum potential damages and penalties recoverable amount to approximately $49,696,603.20.  (*Id*. at ¶ 7.)  Defendant contended that such amounts are unrealistic.  In particular, Defendant asserted that Plaintiff would not be able to recover any waiting time penalties given that the law regarding *de minimis* was in flux and, as such, any violation would not have been willful as required to establish liability for waiting time penalties.

Based on the maximum exposure of class-wide damages calculated above, the total settlement amount of $8,250,000 would account for approximately **16.6 percent** of the total maximum class-wide exposure of $49,696,603.20. (Lee Decl. at ¶ 18.)  On the other hand, if Defendant's argument regarding waiting time penalties are correct, Plaintiff has obtained a significant windfall for the entire class.

### 2.    The Settlement is Fair, Reasonable, and Adequate.

The settlement for each participating Class Member is fair, reasonable, and adequate, given the inherent risk of going forward with trial, the risk of appeals, the risks in an area where it is argued that the law is unsettled, and the costs of pursuing such litigation.

1

### a.   Risks of Proceeding with Trial and Any Appeals.

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. *In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement"); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979); MCL § 21.62 at 316.

Here, the Settlement affords fair relief to the Class, while avoiding significant legal and factual battles, especially at trial, that otherwise may have prevented the Class from obtaining any recovery at all.  Although Plaintiff's attorneys believe the certified claims are meritorious, they are experienced and realistic, and understand that the outcome of a trial, and the outcome of any appeals that would inevitably follow if the class prevailed at trial, are inherently uncertain in terms of both outcome and duration.

One issue which will continue to pose risks at trial is the *de minimis* doctrine. Significantly, in *Frlekin v. Apple, Inc.*, the Ninth Circuit ruled that time spent waiting for and undergoing security inspections qualified as "time worked" subject to the control of the employer. 979 F.3d 639, 643-44 (9th Cir. Sept. 2, 2020).  Notwithstanding that ruling, Defendant maintains that there is a *de minimis* argument to be made in this case, and that it intends on asserting that defense at trial.  Furthermore, Plaintiff has previously received an adverse ruling in this Court based on the *de minimis* doctrine and there is a risk that the Court would make a similar ruling against Plaintiff at trial.  As the Court is aware, Plaintiff's certified class claims were previously dismissed by this Court on summary judgment based on the *de minimis* doctrine.

In light of the risks presented in litigating the *de minimis* defense, the fact that the Court has not yet ruled on liability, and the uncertainty of damages to be recovered for the class, Plaintiff asserts that this settlement is fair, adequate and reasonable, as it provides concrete relief to the Settlement Class without having to proceed with trial on this issue.

### b.   The Settlement is Within the Range of Reasonableness.

The standard of review for class settlements is whether the settlement is within a range of

20

1   reasonableness.  As Professor Newberg comments:

2       > Recognizing that there may always be a difference of opinion as to
3       > the appropriate value of settlement, the courts have refused to
        > substitute their judgment for that of the proponents. Instead the
        > courts have reviewed settlements with the intent of determining
4       > whether they are within a range of reasonableness.…

5   4 Newberg on Class Actions, at § 11.45.

6           Here, the settlement fund is non-reversionary, such that 100 percent of the Net Settlement

7   Amount will be available for distribution to Settlement Class Members who do not opt-out.

8   Moreover, the settlement does not require claim forms.  Rather, Settlement Class Members who

9   do not opt-out will automatically receive a check.  Assuming that every Settlement Class Member

10  elects to participate in the settlement (i.e. no opt-outs), each Settlement Class Member will

11  receive his or her *pro rata* share in addition to the $10.00 base payment, with each person

12  receiving on average an approximate amount of $320.07.  (Lee Decl. at ¶ 14.)  Further, the

13  settlement fund will be paid out entirely in cash (as opposed to a voucher, coupon, etc.).

14          In addition, as set forth in the Settlement Agreement, the release for Settlement Class

15  Members is narrowly tailored to the claims alleged in the operative complaint:

16      > "Settlement Class Members' Released Claims" means any and all
        > claims under the wage and hour laws and regulations of the state of
17      > California that were or could have been asserted based on the facts
        > pleaded in the Lawsuit or any amendments thereto, including but
18      > not limited to, all statutes mentioned in the Lawsuit and
        > corresponding provisions of the relevant California Wage Order,
19      > including but not limited to California Labor Code sections 201,
        > 202, 203, 204, 510, 1194, 1197, 1197.1, and the California Business
20      > and Professions Code sections 17200, *et seq.*, as related to claims
        > for: overtime; minimum wage; waiting time penalties; restitution;
21      > statutory penalties; interest; injunctive relief; and attorneys' fees,
        > costs, and expenses.  The Parties note that Private Attorney General
22      > Act (PAGA) claims and meal and rest break claims under Labor
        > Code Sections 226.7 and 512 are not part of the Lawsuit or this
23      > Settlement.  The "Settlement Class Members' Released Claims" are
        > released from February 25, 2010 through and including December
24      > 31, 2019 (the "Release Period").

25  (Settlement Agreement § 2.30.)  The release for Settlement Class Members includes only the

26  certified class claims, and expressly excludes PAGA claims and meal and rest break claims as

27  those claims are not part of this case.  Pursuant to the Northern District Procedural Guidelines for

28  Class Settlements, the release is appropriate as the released claims is tailored and limited only to

1    the certified class claims.

2         For these reasons, and for the reasons set forth above relating to the total liability and the

3    risks of prevailing on the theories of liability alleged, Plaintiff believes that the current Settlement

4    is fair, reasonable, and adequate.

5              **c.      The Complexity, Expense, and Likely Duration of Continued**

6              **Litigation Against the Settling Defendant Favors Approval.**

7         Another factor considered by courts in approving a settlement is the complexity, expense,

8    and likely duration of the litigation.  *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157.

9    In applying this factor, the Court must weigh the benefits of the settlement against the expense

10   and delay involved in achieving an equivalent or more favorable result at trial.  *Young v. Katz*,

11   447 F.2d 431, 433-34 (5th Cir. 1971).

12        The Settlement Agreement provides to all Settlement Class Members fair relief in a

13   prompt and efficient manner.  Were the Parties to engage in continued litigation of this matter and

14   proceed to trial, Plaintiff may risk losing at trial for his certified class claims based on the reasons

15   explained above.  Moreover, following a decision at trial, there is also the possibility of appeal.

16   Given the realities of litigation, this process places ultimate relief several years away.  The idea of

17   balancing a fair recovery now, with settlement dollars being paid out now, as opposed to battling

18   at trial and a lengthy appeal process, is a significant factor to be considered.  *DIRECTV*, 221

19   F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly

     militates in favor of settlement rather than further protracted and uncertain litigation").

20        The settlement in this case is therefore consistent with the "overriding public interest in

21   settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst*

22   *v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); 4 Newberg on Class Actions, at § 11.41.

23             **d.      Non-Admission of Liability by Defendant.**

24        Finally, Defendant denies any liability or wrongdoing of any kind associated with the

25   claims alleged in this lawsuit.  Defendant further maintains that it has complied at all times with

26   California wage and hour laws.  Because of such denial and as is evidenced by the history of

27   substantial litigation in this case in this Court and in the Ninth Circuit, if this case is not resolved,

28   there is a high likelihood that the case will continue well into the process of appeal.

1

### F.      The Notice to be Given is the Best Practicable.

2

"For any class certified under Rule 23(b)(3), the court must direct to class members the

3

best notice practicable under the circumstances, including individual notice to all members who

4

can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  "The court must direct

5

notice in a reasonable manner to all class members who would be bound by a proposed

6

settlement, voluntary dismissal or compromise."  Fed. R. Civ. P. 23(e)(B).

7

Here, the terms of the Settlement Agreement provide for a notice distribution plan that is

8

designed to achieve the best notice that is practicable under the circumstances.  The Claims

9

Administrator is to mail via first-class U.S. mail a copy of the Court-approved Notice of Class

10

Action Settlement ("Class Notice")[2] to all class members, using their most up-to-date mailing

11

addresses available. (Settlement Agreement § 6.4.)  The Claims Administrator will use a single

12

skip-trace, computer or other search using the name, address and/or Social Security Number of

13

the individual involved for undeliverable Class Notices, and review the addresses with the

National Change of Address Database.  (*Id.*)

14

15

Moreover, the Class Notice provides Settlement Class Members with the information

16

needed to make an informed decision, including: a brief summary of the proposed settlement and

17

information about the lawsuit; a summary of the allocations under the Settlement and the amount

18

that the Settlement Class Member is estimated to receive; the Settlement Class Member's rights

19

and claims that are included in the release; the Settlement Class Member's options including

20

procedures on how to object and opt-out of the settlement; Class Counsel's contact information

21

for any questions; information regarding the final approval hearing and how to appear; procedures

22

on how to obtain more information or access Pacer and/or court records; and contact information

23

and website of the Claims Administrator. It also explains that those who do not opt out will be

bound by the Settlement.

24

### G.      Attorney's Fees, Costs, and Service Award to Plaintiff.

25

Pursuant to the terms of the Settlement Agreement, and without opposition from

26

Defendant, Plaintiff will also be entitled to request an enhancement up to a maximum of

27

---

28

[2] The Class Notice is attached as Exhibit A to the Class Action Settlement Agreement. (*See* Lee Decl. Ex. A.)

1   $15,000.00.  (Settlement Agreement §§ 2.24, 5.2.) This amount is to compensate Plaintiff for his

2   efforts and work in prosecuting this case for over seven years; participating in, reviewing, and

3   responding to discovery, including providing documents to his counsel, and preparing for,

4   traveling to, and sitting for his deposition; meeting and communicating with his counsel on

5   several occasions; reviewing the pleadings and documents in this case, including reviewing and

6   signing the Settlement Agreement and declarations; and for executing a general release of all

7   claims under California Civil Code § 1542. (Rodriguez Decl. at ¶ 4.)

8   Similarly, Class Counsel will seek an award of attorneys' fees of not more than 1/3 of the

9   Class Settlement Amount ($2,750,000.00).  (Settlement Agreement § 2.2.)  Pursuant to the

10  Northern District's Procedural Guidelines for Class Action Settlements, Class Counsel estimates

11  that they have incurred over 3,500 hours in the prosecution of this matter to date, with an average

12  hourly rate of approximately $650.00 per hour. (Lee Decl. at ¶ 31.)  Based thereon, Class Counsel

13  believes that a very minimal multiplier, if any, will be necessary.

14  Finally, Plaintiff and Class Counsel will seek the reimbursement of costs, which mainly

15  includes filing fees, deposition costs, mediation costs, class notice costs, expert fees, and travel

16  expenses.  To date, such costs are approximately $180,000.00.  (Lee Decl. at ¶ 32.)  Both the

17  requested enhancement amounts and attorneys' fees and costs will be requested simultaneously

18  with Plaintiff's motion seeking final approval of this class action settlement.

### H.    Settlement Administrator.

19  The Parties have selected Phoenix Settlement Administrators as the Claims Administrator.

20  (Settlement Agreement § 2.26.)  Pursuant to the Northern District Procedural Guidelines for Class

21  Settlements, the selection process of the Claims Administrator is as follows: Plaintiff's counsel

22  obtained three quotes, from (1) Phoenix Settlement Administrators, (2) Rust Consulting, and (3)

23  ILYM Group, Inc. Administration.  (Lee Decl. at ¶ 21.)  Given that Phoenix Settlement

24  Administrators provided the lowest quote, the Parties subsequently agreed to use Phoenix

25  Settlement Administrators.  (*Id.*) Further, notice by U.S. mail along with the National Change of

26  Address search and skip trace for undeliverable mail has been approved by numerous courts and,

27  therefore, the Parties agreed to notice by U.S. mail.  (*Id.*)  Additionally, a list of cases in which

28  Phoenix Settlement Administrators was appointed as the claims administrator in cases involving

24

1 Plaintiff's counsel over the last two years is set forth in their declarations.  (Lee Decl. at ¶ 23;
2 Hyun Decl. at ¶ 12; Marder Decl. at ¶ 16.)

3   Moreover, the anticipated costs for the settlement administration are not to exceed
4 $69,750.00. (Settlement Agreement § 2.27; Lee Decl. at ¶ 22.)  Plaintiff and his counsel believe
5 that this amount is reasonable in relation to the value of the settlement, as the administration costs
6 account for only approximately 0.85% of the Class Settlement Amount. (Lee Decl. at ¶ 22.)  The
7 administration costs will be deducted from the Class Settlement Amount.  (Settlement Agreement
8 § 2.32.)

9   **I.**  **Notice Under The Class Action Fairness Act ("CAFA").**

10   Pursuant to the Northern District's Procedural Guidelines for Class Action Settlements and
11 in compliance with 28 U.S.C. § 1715, the Parties have agreed that Defendant will provide CAFA
12 notices to the appropriate federal officials and state officials in each of the states in which each
13 Settlement Class Member resides.  (Settlement Agreement § 3.6.)

**III.** **CONCLUSION.**

14   Based on the foregoing, Plaintiffs respectfully request that the Court (1) grant preliminary
15 approval for the proposed class action settlement; (2) authorize the mailing of the proposed notice
16 to the Settlement Class of the settlement; and (3) schedule a "fairness hearing," i.e. a hearing on
17 the final approval of the settlement.

19 DATED:  April 23, 2021   DIVERSITY LAW GROUP

21       By:___/s/ Larry W. Lee_____
       Larry W. Lee
       Attorneys for Plaintiff and the Class

28

25