Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Kristen Agnew (State Bar No. 247656)
kagnew@diversitylaw.com
Nicholas Rosenthal (State Bar No. 268297)
nrosenthal@diversitylaw.com
Max W. Gavron (State Bar No. 291697)
mgavron@diversitylaw.com
Kwanporn "Mai" Tulyathan (State Bar No. 316704)
ktulyathan@diversitylaw.com
**DIVERSITY LAW GROUP, A Professional Corporation**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Certified Class
*[ADDITIONAL COUNSEL ON THE NEXT PAGE]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC RODRIGUEZ, as an individual and on behalf of all others similarly situated, | Case No. 5:14-CV-1508 BLF |
| Plaintiff, | **PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| NIKE RETAIL SERVICES, INC., an Oregon corporation; and DOES 1 through 50, inclusive, | Date:       January 27, 2022 |
| Defendants. | Time:       9:00 a.m. |
| | Courtroom:  3, 5th Floor |
| | Judge:      Hon. Beth Labson Freeman |

William L. Marder (State Bar No. 170131)
bill@polarislawgroup.com
**Polaris Law Group**
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333

Dennis S. Hyun (State Bar No. 224240)
dhyun@hyunlegal.com
**HYUN LEGAL, APC**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Certified Class

**PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 5:14-CV-1508 BLF**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 27, 2022, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3 of the Hon. Beth Labson Freeman, United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, Plaintiff Isaac Rodriguez ("Plaintiff") will and hereby does move the Court for an Order (1) granting final approval of the proposed class action settlement; (2) approving Class Counsel's application for attorneys' fees in the amount of $8,250,000.00 (one-third of the Total Settlement Amount) and reimbursement of costs in the amount of $178,996.11; and (3) approving Plaintiff's request for an enhancement award of $15,000.00.

Given that this is a Motion for Final Approval of a settlement reached with Defendant NIKE Retail Services, Inc. ("Defendant"), Plaintiff has been informed that Defendant will not oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Dennis S. Hyun, Nick Rosenthal, Kristen Agnew, Max Gavron, Mai Tulyathan, William L. Marder, Plaintiff, and Elizabeth Kruckenberg, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED:  December 23, 2021            DIVERSITY LAW GROUP, P.C.
                                     HYUN LEGAL, P.C.
                                     POLARIS LAW GROUP

                                     By:  _____ /s/ Larry W. Lee _____
                                     Larry W. Lee
                                     Nick Rosenthal
                                     Kristen Agnew
                                     Max W. Gavron
                                     Mai Tulyathan
                                     Dennis S. Hyun
                                     William L. Marder
                                     Attorney for Plaintiff and the Class

**TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ............................................................................................. 9

II.   SUMMARY OF ARGUMENT ....................................................................... 10

III.  THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND
SUCCESSFULLY CARRIED OUT ............................................................... 10

    A.   Dissemination of Notice ...................................................................... 10

    B.   CAFA Notice ....................................................................................... 11

IV.   OVERVIEW OF ISSUES AND ARGUMENT ............................................. 11

V.    LITIGATION HISTORY ............................................................................... 11

VI.   THE SETTLEMENT ...................................................................................... 13

VII.  THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL .... 14

    A.   The Strength of Plaintiff's Case Supports Settlement ........................... 15

    B.   Risks, Expense, and Duration of Continued Litigation Support Settlement ....... 15

    C.   The Extent of Discovery Favors Settlement .......................................... 16

    D.   The Recommendations of Counsel Favor Approval of the Settlement ............ 16

    E.   The Class Has Responded Favorably to the Proposed Settlement ................. 17

    F.   The Procedure Through Which the Settlement Was Achieved Supports Final
Approval ................................................................................................. 17

VIII. THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED
19

    A.   The Percentage Awarded Should Mimic the Market ............................. 23

    B.   The Lodestar Calculation "Cross-Check" ............................................. 25

        1. Plaintiff's Counsel's Lodestar is Reasonable ............................. 27

    C.   The Court Should Approve the Request for Reimbursement of Costs ............ 28

IX.   PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED ..................... 28

X.    THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED ................. 30

XI.   CONCLUSION ............................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Other Authorities**

*4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002)....................................................... 18

*Manual for Complex Litigation* (Fourth) § 21.6 (2004) .............................................................. 18

*Manual For Complex Litigation* (Fourth) § 30.42....................................................................... 18

*Newberg on Class Actions*, Fourth Edition, vol. 4, p. 560, § 14.6................................................ 23

**Federal Cases**

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980)............................................ 16

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ........................................................................ 20

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)....................................................... 19, 20, 28

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).................................................. 16

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) .................................... 30

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991)........................ 20, 23

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) .................................................. 20

*Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ....................................................................................................................... 21

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ..... 15, 16, 17, 18

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004)........................................... 17

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ................................................. 14

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ................................................................ 30

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014).... 15, 16, 17

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ....................................... 16

*Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017)............................................................................... 22

**PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**CASE NO. 5:14-CV-1508 BLF**

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251-252 (S.D. Ohio 1991) ................................................................................................................................ 30

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ...................................................................................................................................... 21

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) ................................................................. 20

*Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007) ...................................................................................................................... 30

*Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007) ........ 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ..................................... 14, 15, 18

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ...................................... 20

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) . 30

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ........................................ 16

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ............................. 17

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) ........................................... 20

*In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000) ...................................................................................................................................... 26

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881) ................................ 20

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) ............................................................. 14

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ................................................... 16

*Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166) ........... 22

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ................................... 19

*Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019) ............................ 25

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ...................................................................... 19

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) ........... 15

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ........................................ 26

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ............................................................................................................ 17, 18

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ............................. 17

*Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) .............................. 22

*Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ......................................... 16

*Reilly v. Recreational Equipment, Inc.*, N.D. Cal. 3:18-cv-07385-LB ...................................... 22

*Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810, 818 (9th Cir. 2019) .......................... 12, 25

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................................... 18

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939) ............................................... 20

*Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) .................................................... 29

*Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016) ........ 20, 26

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ................ 30

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d at 1209-10 (2014) .................................... 28

*Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal.

    Dec. 12, 2016) ................................................................................................ 22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ..................................... 21, 27

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) ............... 19

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ............................................. 16, 18

*Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-

    EPG (Dkt. No. 55) ............................................................................................ 22

**State Cases**

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ................................................. 15

*Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001) ............................................................ 27

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016) ........................................................ 21

*Laffitte v. Robert Half Int'l., Inc.* (2014) 231 Cal.App.4th 860, 871 ....................................... 22

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) ....... 29

*Troester v. Starbucks Corp.*, 421 P.3d 1114 (Cal. 2018) ...................................................... 12

*Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018) ............................................................. 15

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 447 (2000) ........................... 27

**PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT**
**CASE NO. 5:14-CV-1508 BLF**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

As this Court may recall, this settlement was reached after years of significant litigation, and nearly on the eve of trial.  Indeed, this case was completely dismissed by Defendant's prior summary judgment, only to be resurrected through Plaintiff's appeal.  By this motion, Plaintiff Isaac Rodriguez ("Plaintiff") seeks final approval of a substantial class-wide settlement reached between Plaintiff and Defendant NIKE Retail Services, Inc. ("Defendant") (Plaintiff and Defendant collectively, the "Parties").  Plaintiff also seeks an order approving Class Counsel's application for attorneys' fees in the amount of $2,750,000.00 (one third of the Total Settlement Amount of $8,250,000.00), reimbursement of litigation costs in the amount of $178,996.11, and Plaintiff's application for a enhancement award of $15,000.00.  This request was set forth in the Notice of Class Action Settlement ("Class Notice") mailed to all Class Members.  Moreover, the settlement documents, including the Agreement, were uploaded and made available to putative class members on the Administrator's website.  As set forth in the Class Action Settlement Agreement ("Settlement Agreement") between the Parties, Defendant has agreed to not object to the requests sought herein.

On September 30, 2021, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Settlement (Dkt. No. 156) ("Preliminary Approval Order").  The Parties now seek this Court's final approval of the settlement.

The settlement requires Defendant to pay a total of Eight Million Two Hundred Fifty Thousand Dollars ($8,250,000.00), a sum which represents a substantial recovery for the members of the Class.  **Again, this settlement is non-reversionary, such that no monies will revert back to Defendant.  (Settlement Agreement § 5.5.)**  As such, there was no claims process involved.  Class Members were given an opportunity to object or opt-out of the settlement.  As of the date of this filing, there have been zero (0) opt outs and zero (0) objections

to the settlement. (Declaration of Elizabeth Kruckenberg ("Kruckenberg Decl.") ¶¶ 7-8.)[1] Accordingly, this shows that the overwhelming majority of Class Members have reacted favorably to the settlement as there is a **100% participation rate and not a single objection from the 16,365 member class as of the date of this filing**. Moreover, all of the Court's orders concerning dissemination of the Class Notice have been followed.

Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II.   SUMMARY OF ARGUMENT

As previously detailed in Plaintiff's Motion for Preliminary Approval (Dkt. No. 153), this case was hard fought over several years, including numerous dispositive motions, class certification and decertification, roughly 25 depositions of Plaintiff, and Defendant's FRCP 30(b)(6) witnesses, managerial employees, and expert observers, as well as the Parties' respective experts, expert reports, several rounds of written discovery, and an appeal to the Ninth Cirucit which overturned the dismissal of this case.

The detailed terms of the settlement are set forth in the Class Action Settlement Agreement ("Settlement Agreement") entered into by the Parties and previously provided to this Court. (Dkt. No. 153-1.) Pursuant to the settlement terms, Defendant will pay the entirety (100%) of the settlement sum of $8,250,000.00 without any reversion to Defendant.

The proposed settlement meets the criteria for final approval, which are set forth in the Manual for Complex Litigation, Fourth, and is well within the range of what would be fair, reasonable, and adequate in this case. Thus, Plaintiff requests that the Court take the final step in the approval process – granting the requested final approval of the settlement which is sought herein.

## III.   THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

### A.   Dissemination of Notice

---

[1] The Exclusion/Written Objection Deadline is January 17, 2022. As such, the Settlement Administrator will submit a supplemental declaration after the deadline, but before the hearing on this matter.

As noted above, preliminary approval was granted on September 30, 2021.  At that time, Phoenix Settlement Administrators ("Settlement Administrator") was appointed by the Court as the Settlement Administrator.  The Parties, through the work of the Settlement Administrator, have complied with this Court's orders concerning dissemination of the class notice. (Kruckenberg Decl. ¶¶ 2-9.)

The notice was mailed to the class of 16,365 individuals utilizing the data provided by Defendant.  (Kruckenberg Decl. ¶¶ 3-5.)  As of the date of this filing, no notices have been returned as undeliverable.  (*Id.* ¶ 6.)  However, as set forth above, Plaintiff will submit

### B.      CAFA Notice

Pursuant to the Class Action Fairness Act of 2005 (the "CAFA"), Defendant provided notice of the proposed settlement to the appropriate federal and state agencies in May 21, 2021.

## IV.      OVERVIEW OF ISSUES AND ARGUMENT

As discussed in detail in the previously filed Motion for Preliminary Approval (Dkt. No. 153), this case primarily arose out of Defendant's alleged security inspection practices. Specifically, Plaintiff alleged that whenever employees left the retail store, they had to undergo a security inspection.  Defendant denies that it engaged in any alleged unlawful conduct  and maintains that it has complied with California law.  Further, Defendant contends that it would have prevailed on the merits at trial.

## V.      LITIGATION HISTORY

On February 25, 2014, Plaintiff filed a class action complaint against Defendant in the Santa Clara Superior Court, on behalf of himself and a proposed class consisting of "all current and former non-exempt retail store employees of Defendants who worked in California during the period from February 25, 2010 to the present."  On April 1, 2014, the Action was removed to the United States District Court for the Northern District of California, Case No. 5:14-cv-1508-BLF.  Dkt. No. 1.  Plaintiff subsequently filed a First Amended Complaint on December 8, 2014, alleging the following causes of action: (1) violation of Cal. Labor Code §§ 1194 and 1197; (2) violation of Cal. Labor Code §§ 510 and 1194; and (3) violation of Cal. Bus. & Prof. Code §§ 17200, et seq.  Dkt. No. 27.  Plaintiff also sought waiting time penalties as part of his prayer for

1  relief.  Id.

2      On August 19, 2016, the Court granted Plaintiff's Motion for Class Certification and

3  denied Defendant's Motion to Deny Class Certification as moot.  See Dkt. No. 69.  The Court

4  certified the following class: "All current and former non-exempt retail store employees of

5  Defendant who worked in California during the period from February 25, 2010 to the present."

6  Id. at p. 19.  In granting class certification, the Court found that common questions of law and

7  fact predominated:

8          Rodriguez is not asking for compensation for all the time between
           when an employee clocks out and when she walks out the front
9          door.  He is asking for compensation only for time spent waiting
           for an exit inspection or being inspected.  All employees have to be
10         visually inspected before they can leave the store, so no
           individualized inquiries are required.

11 Id. at p. 11.

12     Defendant subsequently moved for summary judgment against the certified class based

13 on the de minimis doctrine, arguing that its average inspection only takes seconds and thus is de

14 minimis and not compensable under the law.  Dkt. No. 84.  On September 12, 2017, the Court

15 granted Defendant's Motion for Summary Judgment.  Dkt. No. 100.  Plaintiff appealed the ruling

16 to the Ninth Circuit.  While Plaintiff's appeal was pending, this Court taxed Defendant's costs in

17 full and imposed $17,839.02 in costs against Plaintiff.  Dkt. Nos. 110 & 111.

18     After full briefing and oral argument, on June 28, 2019, the Ninth Circuit issued its

19 opinion in *Rodriguez v. Nike Retail Servs., Inc*., 928 F.3d 810, 818 (9th Cir. 2019), reversing the

20 District Court's grant of the Defendant's motion for summary judgment based on *Troester v.*

21 *Starbucks Corp*., 421 P.3d 1114 (Cal. 2018), which held that the federal *de minimis* doctrine does

22 not apply to wage and hour claims brought under California law.

23     Following remand from the Ninth Circuit, the Parties stipulated to amend the class

24 certification order to expand class membership to November 15, 2019.  Dkt. No. 135.  As

25 Defendant changed its security check policy to have security inspections performed on the clock

26 effective November 15, 2019, to the Parties agreed to cut off class membership as of that date.

27 Thus, pursuant to the Parties' stipulation, the certified class was expanded to include "all current

28 and former non-exempt retail store employees of Defendant who worked in California during the

12

1  period from February 25, 2010 to November 15, 2019." Dkt. No. 136.

2  **VI.    THE SETTLEMENT**

3          The Settlement terms were summarized in detail in the Motion for Preliminary Approval,

4  and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary

5  duplication.  The specific terms of the settlement are set forth in the Settlement Agreement and

6  the Order Granting Motion for Preliminary Approval of Class Settlement.  (Dkt. Nos. 153-1 and

7  156.)  The principal terms are:

8          a.    Settlement Class is "all current and former non-exempt/hourly retail store

9  employees of Defendant who worked in California at any time from February 25, 2010 through

10  and including November 15, 2019. Defendant represents that the Settlement Class is comprised

11  of approximately 16,365 unique individuals."

12         b.    The Settlement Class is releasing:

13  > [A]ny and all claims under the wage and hour laws and regulations of the
   > state of California that were or could have been asserted based on the facts
14 > pleaded in the Lawsuit or any amendments thereto, including but not
   > limited to, all statutes mentioned in the Lawsuit and corresponding
15 > provisions of the relevant California Wage Order, including but not
   > limited to California Labor Code sections 201, 202, 203, 204, 510, 1194,
16 > 1197, 1197.1, the and California Business and Professions Code sections
   > 17200, et seq., as related to claims for: overtime; minimum wage; waiting
17 > time penalties; restitution; statutory penalties; interest; injunctive relief;
   > and attorneys' fees, costs, and expenses.  The Parties note that Private
18 > Attorney General Act (PAGA) claims and meal and rest break claims
   > under Labor Code Sections 226.7 and 512 are not part of the Lawsuit or
19 > this Settlement.  The "Settlement Class Members' Released Claims" are
   > released from February 25, 2010 through and including December 31,
20 > 2019 (the "Release Period").

21  (Settlement Agreement at ¶ 2.30).

22         c.    Defendant will pay the Total Settlement Amount of $8,250,000.00.  This sum

23  includes payments made to the settlement class members, settlement administration costs,

24  awards of attorneys' fees and costs, and the class representative enhancement award.

25         d.    The sum available for use as payments to class members after the settlement

26  administration costs, awards of attorneys' fees and costs, and the class representative

27  enhancement award shall be referred to as the Net Settlement Amount.  Defendant agrees that it

28  shall pay the entirety (100%) of the Net Settlement Amount.  **In other words, the settlement is**

1   **non-reversionary, meaning that no funds will revert back to Defendant.**

2       e.      No claim forms were necessary for any class member to participate in the

3   settlement and receive their share of the settlement.   Thus, any class member who does not opt-

4   out in connection with this settlement will automatically receive his/her share of the settlement

5   proceeds.   On average, each class member will receive approximately a payment of $319.97.

6   (Kruckenberg Decl. ¶ 11). The highest individual settlement payment to be paid will be

7   approximately $2,280.74. (*Id.*)

8       f.      Any remaining monies from uncashed checks will be paid to Legal Aid at Work.

9       g.      All of this Court's orders in connection with the settlement administration process

10  have been followed.  (*See* Kruckenberg Decl. filed herewith).

11      The settlement represents a compromise between the positions and evaluations of the two

12  sides to this controversy.  Clearly, there were significant disagreements between the Parties as to

13  the facts and the law.

14  **VII.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL**

15      Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action

16  must receive Court approval.  The court has broad discretion to grant such approval and should

17  do so where the proposed settlement is "fair, adequate, reasonable, and not a product of

18  collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*,

19  218 F.3d 132, 138 (2nd Cir. 2000).  In determining whether a proposed settlement should be

20  approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly

21  where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268,

22  1276 (9th Cir. 1992).

23      The fairness, reasonableness, and adequacy of any class action settlement depends on

24  "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of

25  further litigation; the risk of maintaining class action status throughout the trial; the amount

26  offered in settlement; the extent of discovery completed and the stage of the proceedings; the

27  experience and views of counsel; ... and the reaction of class members to the proposed

28  settlement." *Hanlon* 150 F.3d at 1026.  Here, as set forth in the Motion for Preliminary

Approval and discussed below, the factors for final approval of this settlement have been established.

### A.   The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  One issue which will continue to pose risks at trial is the *de minimis* doctrine.  Significantly, in *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018), the California Supreme Court has issued its opinion on July 26, 2018 holding that *de minimis* doctrine does not apply to regularly occurring work under the California Labor Code.  However, the Court left open the question and did not address whether there are other activities that are so irregular or brief that it is unreasonable to require compensation. *Id.*  While this Court previously addressed *Troester* in its Order Denying Class Certification, the Court only found that whether time spent off-the-clock for security checks and visual inspections did not defeat commonality.  (Dkt. No. 122.)  The Court has yet to rule on liability with respect to the certified security check claims.  As this issue remains undecided, this Settlement provides concrete relief to the Class without having to proceed with trial on this issue.

Finally, even if a violation could be established, as to the PAGA claim, this Court has complete discretion to decrease any applicable penalties that could be assessed.  Indeed, just recently, the California Court of Appeals upheld a decision wherein PAGA penalties were reduced by 90%. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018).

Therefore, this factor favors settlement.  See *Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); see *also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

### B.   Risks, Expense, and Duration of Continued Litigation Support Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement." *Dyer*, 2014 WL 5369395, at *3 (citation omitted).  In addition to the obstacles set forth above, even if

Plaintiff had prevailed at trial, there was a likelihood that Defendant would have appealed the verdict.  Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement.  *See Dyer*, 2014 WL 5369395, at \*3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

### C.      The Extent of Discovery Favors Settlement

Here, settlement was reached following several years of litigation, motion, and appellate practice, including depositions of Plaintiff, FRCP 30(b)(6) witnesses, numerous percipient managerial employees, expert observers, and the Parties' respective experts, as well as interviews of class members, production of class data and time records, and extensive expert discovery.  Courts have held that such discovery is sufficient for parties to make an informed decision regarding the adequacy of the settlement.  *See*, *e.g*., *Dyer*, 2014 WL 5369395, at \*3 (parties' participation in written discovery, depositions, witness interviews, and formal mediation favors an informed settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 ("true value of the class claims is well-known and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed decision about settlement).

### D.      The Recommendations of Counsel Favor Approval of the Settlement

The recommendations of experienced counsel should be given considerable weight.  *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980),  ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp*., 703 F.2d 170, 175 (5th Cir. 1983); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), *Armstrong v. Board of Sch. Dirs*., 616 F.2d 305, 325 (7th Cir. 1980).

Lead counsel for Plaintiff has broad experience litigating employment class actions.  (Lee Decl. ¶¶ 11-15; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶¶ 3-6; Declaration of William L.

Marder ("Marder Decl.") ¶¶ 3-11.)  They support this settlement as a fair and reasonable settlement which is in the best interest of the settlement class.  (Lee Decl. ¶¶ 3-8; Hyun Decl. ¶¶ 7-9; Marder Decl. ¶¶ 12-13.)  Therefore, this factor favors approval of the settlement.  *See Dyer*, 2014 WL 5369395, at \*3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (same).

### E.      The Class Has Responded Favorably to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members.  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at \*6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

Here, as of the date of this filing, **not a single class member out of 16,365 individuals has objected or opted out** of this settlement.  (Kruckenberg Decl. ¶¶ 7-8.)  In other words, this settlement has a 100% participation rate.  (*Id.*)  Thus, the absence of any objections or opt-outs strongly support the fairness of the settlement.  *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at \*4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Chun–Hoon*, 716 F. Supp. 2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

### F.      The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case.  *Officers for Justice*, 688 F.2d at 625. Therefore, although not one of the *Officers for Justice* listed factors, the procedures by which the settlement was achieved also strongly support the fairness of the settlement.  *See Chun-Hoon*, 716 F. Supp. 2d at 851 ("To these factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived at"), citing *Manual for Complex Litigation*

(Fourth) § 21.6 (2004).  As noted above, the parties participated in arm's length negotiations, including one full day of a mediation before Michael Loeb, Esq., who was able to facilitate this settlement.   This weighs in favor of approval of the settlement.  *See Chun-Hoon*, 716 F. Supp. 2d at 851 (finding that use of formal arm's-length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents.  In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties."  *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027.  The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested."  *Rodriguez*, 563 F.3d at 965 (citations omitted).  As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value."  *Id*. at 965 (citations omitted).  *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation* (Fourth) § 30.42).

The proposed settlement has no deficiencies.  There is no standard or benchmark for determining whether any given settlement is fair.  "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'"  *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (citation omitted).  In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement.

1    *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very

2    uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that

3    induce consensual settlements").

4         The settlement has been reached after considerable investigation, litigation, negotiation,

5    and involving the mediation efforts of a highly experienced mediator.  Each side evaluated the

6    strengths and weaknesses of their case and independently came to the conclusion that this

7    settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as

8    well as Defendant's contention that it would prevail on the merits.

9    **VIII.   THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED**

10        Governing Ninth Circuit law, following the clear instruction of the United States

11   Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), establishes that

12   percentage awards are to measure against the entire common fund created in the settlement.  In

13   *Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007), citing

14   to the Ninth Circuit authority, the Court noted:

15              The Ninth Circuit has held, however, that the district court must
               award fees as a percentage of the entire fund, or pursuant to the
16             lodestar method, not on the basis of the amount of the fund
               actually claimed by the class.
17

18   *See also Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir.1997).

19        Moreover, the U.S. Supreme Court consistently has recognized that "a litigant or a lawyer

20   who recovers a common fund for the benefit of persons other than himself or his client is entitled

21   to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S.

22   472, 478 (1980); *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970). The purpose of this doctrine

23   is largely to avoid unjust enrichment, by spreading the litigation costs proportionally among all

24   the beneficiaries so that the active beneficiary does not bear the entire burden alone.  It provides

25   that when a litigant's efforts create or preserve a fund from which others derive benefits, the

26   litigant may require the passive beneficiaries to compensate those who created the fund.

27        Every United States Supreme Court case that has considered the award of attorney's fees

28   under the common fund doctrine has determined those fees as a percentage of the recovery.  *See,*

*e.g.*, *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)) (noting that the percentage of recovery method is the appropriate method to award attorney's fees in common fund cases); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881).

The Ninth Circuit has also recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33% of the recovery). Although the Ninth Circuit has typically found that 25% of the common fund is "benchmark," numerous courts in the Ninth Circuit have awarded higher amounts. *See Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016). The twenty-five percent benchmark may be adjusted upward or downward depending on the circumstances presented by the particular case. Indeed, the Ninth Circuit and district courts therein have routinely permitted recovery in the amount of 33.33%, 40% and even up to 50% of the common fund. *See, e.g.*, *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (listing Ninth Circuit cases).

Seeking a fee based on a percentage of the gross recovery, which is what Class Counsel is seeking here, is appropriate and even desirable in cases like this. *See* Newberg on Class Actions, Fourth Edition, vol. 4, p. 556, §14.6 (noting that percentage of the fund awards are preferable because they align the interests of the attorney with the client, as the attorney is not incentivized to bill unnecessary hours to generate a greater fee); *Boeing*, 444 U.S. at 478. Unlike the lodestar method which can encourage class counsel to devote unnecessary hours to generate a substantial fee, under the POR [percentage of recovery] method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fees the lawyer earns. Thus, one of the primary advantages of the POR method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner.

1    As reiterated by the Ninth Circuit, courts are obligated to apply California law in diversity

2    jurisdiction cases in awarding attorneys' fees.  *Farmers Ins. Exch. v. Law Offices of Conrado Joe*

3    *Sayas, Jr*., 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity

4    jurisdiction, we are obligated to apply California state law regarding attorneys' fees."); *Vizcaino*

5    *v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Public Utils. Comm'n*,

6    67 F.3d 1470, 1478 (9th Cir. 1995); *Chambers v. Whirlpool Corp*., No. CV111733FMOJCGX,

7    2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ("[i]n diversity actions…, the Ninth Circuit

8    **applies state law to determine the right to fees and the method for calculating fees**")

9    (emphasis added).

10   As this case was removed to this Court pursuant to diversity jurisdiction, Plaintiff

11   respectfully submits that California law should govern this Court's analysis.  The California

12   Supreme Court clarified its stance on common fund cases, ruling –

13   "We join the overwhelming majority of federal and state courts in holding that when
     class action litigation established a monetary fund for the benefit of the class members,
14   and the trial court in its equitable powers awards class counsel a fee out of that fund,
     the court may determine the amount of a reasonable fee by choosing an appropriate
15   percentage of the fund created."

16   *Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016).  Explaining its ruling, the Court further

17   held that "[t]he recognized advantages of the percentage method – including relative ease of

18   calculation, alignment of incentives between counsel and the class, a better approximation of

19   market conditions in a contingency case, and the encouragement it provides counsel to seek an

20   early settlement and avoid unnecessarily prolonging litigation – convince us the percentage

21   method is a valuable tool that should not be denied by our trial courts."  *Id.* (internal citations

22   omitted); *see also Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047.

23   Based on this rationale, the California Supreme Court in *Laffite* affirmed a fee award

24   representing one-third of the fund and rejected the objections of putative class members to this

25   award.  *Laffitte*, 1 Cal.5th at 506.  Further, this was based on a lodestar amount that required a

26   multiplier of 2.13.  *Id*. at 487.  As the Court held, only when the multiplier is "extraordinarily

27   high or low [should] the trial court [] consider whether the percentage method should be

28

**PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 5:14-CV-1508 BLF**

adjusted so as to bring the imputed multiplier within a justifiable range." *Id.* at 505. Moreover, in the *Laffitte* intermediate court decision, the court observed that "33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits." *Laffitte v. Robert Half Int'l., Inc.* (2014) 231 Cal.App.4th 860, 871.

Numerous district courts have followed *Laffitte* in awarding 1/3 of the common fund. Indeed, District Judge Edward Davila in *Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) and *Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166), followed *Laffitte* in awarding Plaintiff's counsel (the same counsel as in the instant case) 1/3 of the common fund of $1.15 million based on a multiplier of 1.32 and $3.8 million based on a negative multiplier, respectively. Magistrate Judge Laurel Beeler in *Reilly v. Recreational Equipment, Inc.*, N.D. Cal. 3:18-cv-07385-LB, also awarded Plaintiff's counsel 1/3 of the common fund of $5 million based on a multiplier of 2.7.

Additionally, the Northern District Court in *Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016), cited *Laffitte* when awarding 33% of the common fund:

> Plaintiffs' fee request of $ 4,500,000 represents one-third of the Settlement Fund, which is reasonable under both applicable law, and in light of the contingent risk, Counsel's documented lodestar, the complex and protracted nature of the case, and strong result for the Class.

*Id.*

Further, the Eastern District Court in *Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55), followed *Laffitte*, in awarding 1/3 of the common fund of $3.4 million, or $1,133,333.33 in attorneys' fees applying a multiplier of 1.328. (Dkt. No. 55 at 12-14.) In so holding, the Court reiterated that "[i]n a diversity action such as this, federal courts apply state law both to determining the right to fees and the method of calculating them." *Id.*; *see also Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) (following *Laffitte* in awarding 33% of the common fund; "[t]he California Supreme Court recently held that the percentage-of-fund method of calculating attorneys' fees survives in California courts").

## A.    The Percentage Awarded Should Mimic the Market

*Newberg on Class Actions*, Fourth Edition, vol. 4, p. 560, § 14.6 contains an interesting discussion of the concept of a marketplace analysis and why it is so valuable in determining a percentage award:

> [Goodrich and Silver]…suggest that fee awards should be consistent with contingent fee arrangements negotiated in non-class litigation:
> The percentage method is consistent with and is intended to mirror practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. As Judge Posner emphasized in *In re Continental Illinois Securities Litigation*s, "[t]he object in awarding a reasonable attorney's fee…is to simulate the market...The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." In non-class litigations, one-third contingency fees are typical. In their concurring opinion in Blum, Justices Brennan and Marshall observed that "[i]n tort suits, an attorney might receive one-third of whatever the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."
> If named plaintiffs have agreed to pay a one-third contingent fee, that is powerful evidence of a reasonable fee. One of the best ways to demonstrate the value of counsel's work to the class is to review the consideration agreed to be paid by the named plaintiffs in their contracts. If the named plaintiffs have employed their counsel by contingent fee agreements that obligated them to pay one-third of the recovery, it would indeed be inequitable for the members of the class, who will enjoy the benefits of this settlement without incurring the risks of bringing the claim, to pay less than the named plaintiffs.

The complex and heavily litigated nature of this litigation, and its successful result lead to the clear conclusion that the fee request herein is reasonable.  In *Camden I Condominium Association, Inc., v. Dunkel*, 946 F. 2d 768 (11th Cir. 1991), the court identified various factors to be considered in arriving at a common fund fee determination.  Each of the factors is now briefly addressed.

1.    The time and labor required – this is overwhelmingly established in this motion, based upon the work involved, and the supporting attorney declarations and time charts submitted;

2.    The novelty and difficulty of the questions involved – this case involved novel and difficult questions of evolving law, including *Troester* and *Frlekin*, which the Parties briefed

and litigated, including to the Ninth Circuit;

3.      The skill requisite to perform the legal services properly – this goes hand in hand with the first and second factors.  Plaintiff's counsel was able to litigate this case effectively and ultimately achieved a very good result for the class because of Plaintiff's counsel's experience in litigating wage and hour cases;

4.      The preclusion of other employment by the attorney due to the acceptance of the case – the case required and demanded attorney time on both sides.  The result of this scheduling was that Class Counsel could have spent such time on numerous other matters while this litigation was ongoing.  Indeed, Plaintiff's counsel took numerous class member depositions, briefed and argued numerous motions, and zealously represented Plaintiff and the Class;

5.      The customary fee – as discussed above, numerous courts have approved an award of 33.33% of the gross settlement fund, which is the standard percentage pursuant to California law;

6.      Whether the fee is fixed or contingent – this matter was clearly contingent without any sort of fixed or guaranteed fees for Class Counsel.  Indeed, Plaintiff's counsel's sole payment was based on contingency fee and no fixed guaranteed costs would have received unless Plaintiff's counsel were successful in this litigation;

7.      Time limitation imposed by the client or the circumstances – although the client did not impose any time limitations, Class Counsel invested a significant amount of time in this case;

8.      The amount involved and results obtained – this is discussed above;

9.      The experience, reputation and ability of the attorney – as evidenced by the supporting declarations, Class Counsel has been designated and certified as class counsel in numerous other matters, including in the Northern District;

10.      The nature and length of the relationship with the client – this does not apply; and

11.      Awards in similar cases – similar cases were identified in the section above.

As the Court is well aware, Plaintiff's counsel has diligently and zealously litigated this case over several years, including successfully appealing dismissal of this case, fighting against

numerous attempts by Defendant to rebut the claims and defeat class certification. Significant risks were assumed by Plaintiff's counsel in litigating this case. Plaintiff's counsel's lodestar cross check also supports the award of the 33.33% percentage fee given that their lodestar cross check results in a negative multiplier!

Moreover, as this Court knows, Plaintiff's attorneys heavily and aggressively litigate numerous wage and hour class actions on behalf of workers throughout the State of California – all cases of which are on a contingency fee basis. *See, e.g.*, *Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810, 818 (9th Cir. 2019); *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019). For example, in *Magadia*, Plaintiff's counsel litigated that case for several years, including trying the case to a successful $102 million judgment on behalf of the class. Walmart appealed and prevailed, such that Plaintiff's counsel lost their judgment and were not reimbursed any costs or attorneys' fees. As such, employment class actions present significant risks. Nevertheless, Plaintiff's counsel zealously represent workers notwithstanding the potential for losing cases, or not being reimbursed attorneys' fees and costs for years of tireless litigation.

The fee sought relates to all efforts expended by Class Counsel for the complete handling of the class/representative action, including any additional work remaining to be performed by Class Counsel in securing final Court approval of the Settlement, and later following through to ensure that the Settlement is fairly administered and fully implemented.

A significant amount of work on the part of Class Counsel went into achieving this resolution. Based upon the factors relating to approval of percentage of the fund fee awards, class counsel submit that the effort and result justify the requested percentage fee requested. As a secondary "cross-check" to the percentage of the common fund award, class counsel are also providing this Court with a time and task chart, which breaks down the tasks and time spent by each firm, so that the Court can conduct a lodestar analysis.

Plaintiff's attorneys' time and task charts show in this case that Plaintiff's counsel lodestar is $2,333,980.00 which results in a 1.17 multiplier of the requested amount.

## B.    The Lodestar Calculation "Cross-Check"

It has been noted that it is sometimes helpful to courts to "cross-check" a percentage

award by employing a lodestar with a multiplier analysis.  While the lodestar method is generally considered inappropriate in a common fund case where real cash benefits (as opposed to coupons or non-monetary benefits) are made available to class members, its use can provide further validation of the appropriateness of the percentage award approach.  *See In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000).  Such is the case here.

The declarations of Class Counsel evidence the fact that they devoted approximately 3,274.7 hours of time to this litigation to date.  (Lee Decl. ¶¶ 16-17, Exh. A; Agnew Decl. ¶¶ 11-13, Exh. A; Rosenthal Decl. ¶¶ 5-6, Exh. A; Gavron Decl. ¶¶ 12-13, Exh. A; Tulyathan Decl. ¶¶ 13-15, Exh. A; Hyun Decl. ¶¶ 10-12, Exh. A; Marder Decl. ¶¶ 14-16, Exh. A.)  These hours are summarized in the time and task charts that are attached to Plaintiff's counsel's declarations.  And, to the extent that any argument is made that the time spent was duplicative, the way in which Plaintiff's counsel work is for each attorney to handle a task and for the other attorneys to review and revise the work, which is identical to the way defense firms staff and handle cases.  More importantly, as recently noted by the Ninth Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May 11, 2016), "some amount of duplicative work is 'inherent in the process of litigating over time.'"  (Citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, as explained above, Class Counsel expect to expend an additional 90 hours through the final approval hearing, including on matters such as preparing the Motion for Final Approval, attending the final approval hearing, and further conferring with class members regarding the case status.  (Lee Decl. ¶ 17; Hyun Decl. ¶ 11; Marder Decl. ¶ 15; Rosenthal Decl. ¶ 6; Gavron Decl. ¶ 15; Tulyathan Decl. ¶ 15.)  Thus, Class Counsel will have expended 3,364.7 hours through final approval.

Applying the various hourly rates of the law firms and lawyers who dedicated their efforts to this matter, a lodestar of $2,333,980.00 is established for the amount of work spent through final approval and for post-approval administration of the settlement.  (Lee Decl. ¶¶ 16-17, Exh. A; Agnew Decl. ¶¶ 11-13, Exh. A; Rosenthal Decl. ¶¶ 5-6, Exh. A; Gavron Decl. ¶¶ 12-

13, Exh. A; Tulyathan Decl. ¶¶ 13-15, Exh. A; Hyun Decl. ¶¶ 10-12, Exh. A; Marder Decl. ¶¶ 14-16, Exh. A.)  The percentage award sought by Class Counsel, if converted to the lodestar method, would entail a modest multiplier of approximately 1.17.  In the Ninth Circuit, **positive** multipliers "ranging from one to four are frequently awarded…when the lodestar method is applied." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir.) .  Again, in *Spann*, the Court granted a 3.07 multiplier.  Thus, as set forth in the Introduction to this motion, the fee application is supported whether by the cross-check lodestar/multiplier method discussed herein, or by the percentage of the common fund discussed in the preceding sections.

### 1.    Plaintiff's Counsel's Lodestar is Reasonable

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable.  Plaintiff's attorneys are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation.  The background and experience of Plaintiff's counsel are fully set forth in the declarations filed in support of this motion.  The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation.  The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed. Lee Decl. ¶¶ 16-17, Exh. A; Agnew Decl. ¶¶ 11-13, Exh. A; Rosenthal Decl. ¶¶ 5-6, Exh. A; Gavron Decl. ¶¶ 12-13, Exh. A; Tulyathan Decl. ¶¶ 13-15, Exh. A; Hyun Decl. ¶¶ 10-12, Exh. A; Marder Decl. ¶¶ 14-16, Exh. A.)

As discussed in their supporting declarations, Class Counsel are a group of well-experienced litigators, including class action litigation.  (Lee Decl. ¶¶ 11-15; Hyun Decl. ¶¶ 3-6; Marder Decl. ¶¶ 3-11; Tulyathan Decl. ¶¶ 9-12; Agnew Decl. ¶¶ 2-7; Gavron Decl. ¶¶ 2-8; Rosenthal Decl. ¶¶ 2-3.)   Under California law, counsel are entitled to compensation for all hours reasonably spent on the matter.  *Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001).  Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself…." *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 447 (2000).  In addition, the attached

1   time and task charts clearly reflect the many hours which were necessarily spent on the case.

2          In the Litigation History section above, the nature and extent of the proceedings held

3   throughout this litigation were set forth in detail.  Without repeating the same, it is incorporated

4   herein.  The total hours and billings thus generated are all supported herein.  In sum, it is

5   submitted that the reasonableness of Plaintiff's lodestar is manifest.  In the present case, Class

6   Counsel's lodestar exceeds the requested amount and thus, heavily favors granting of 33.33%

7   fees in this case.

8          Whether analyzed under the percentage of the fund approach, which is the dominant

9   view, or via the cross-check approach under the loadstar/multiplier approach, the fees are fully

10  supported.  This entire case has been litigated from the onset, demanded an extraordinary effort

11  on the part of Class Counsel, and further required substantial costs advanced.

12         Finally, and as instructed by our Supreme Court and Ninth Circuit law, fees should be

13  awarded off of the total fund created.  It is the creation of the fund, and the opportunity to simply

14  receive one's share, which creates the right to the fee.  *Boeing Co. v. Van Gemert*, 444 U.S. 472,

15  478 (1980).

16         **C.     The Court Should Approve the Request for Reimbursement of Costs**

17         The request for reimbursement of costs, in the amount of $178,996.11 is fair and

18  reasonable.  As stated above, the costs are all litigation related costs, which have been detailed in

19  the supporting declaration of Class Counsel.  (Lee Decl. ¶ 19, Exh. B; Marder Decl. ¶ 17, Exh.

20  B; Hyun Decl. ¶ 13, Exh. B.)  The authority for the Court to award costs is the parties'

21  Settlement Agreement and Labor Code Sections 218.5, 226(e), and 2699(g)(1).  Further,

22  pursuant to the Settlement Agreement, Defendant has agreed not to oppose any request for

23  reimbursement of costs up to $250,000.00, but the actual costs that are being sought are much

24  less than the amount allotted in the Settlement Agreement.  Pursuant to all of the authority cited

25  above, including this Court's opinion in *Vandervort*, 8 F. Supp. 3d at 1209-10, Plaintiff's counsel

26  should be awarded their costs.

27  **IX.   PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED**

28         Finally, Plaintiff's enhancement is also justified given the duration of the litigation and

28

**PLAINTIFF'S AMENDED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 5:14-CV-1508 BLF**

his availability throughout the litigation to cooperate in producing documents, reviewing documents, and traveling from Gilroy to San Jose to prepare and sit for his deposition and having Defendant's costs awarded against him in the amount of $17,839.02.  Dkt. Nos. 110 & 111; Declaration of Isaac Rodriguez ("Rodriguez Decl.") ¶ 9.

Plaintiff respectfully requests that the full amount of the service payment be awarded to him for the efforts that he undertook on behalf of the Class Members.  It is commonly held that it is appropriate to recognize the role of the representative plaintiff without whose actions and courage the benefits of the settlement, which are conferred on the class as a whole, would never have been achieved.  The criteria courts may consider in relation to incentive payments include: 1) the risk to the class representative in commencing the suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *See Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)).  Each of these factors favors the service awards requested in the present case.

Plaintiff is the only representative in this case.  Plaintiff met with his attorneys to provide information regarding the facts involved.  (Rodriguez Decl. ¶ 4.)  Plaintiff also met with his attorneys to discuss the case and facts related to this matter.  (*Id.*)  Plaintiff has made himself available to answer questions and to sign declarations in support of the various motions that have been brought in this case.  (*Id.*)  Plaintiff further traveled from Gilroy to San Jose to prepare for and testify at his deposition.  (*Id.*)

Plaintiff took these risks upon himself from which the whole Class benefitted.  Class members did not have to file individual lawsuits, nor did they have to bear the risks of payment of fees and costs should they not prevail.  Class members also do not have to face the risk of potential retaliation or risk of future employment, due to Plaintiff's efforts.  In short, Plaintiff sacrificed a significant amount of time, effort, and his own rights in bringing about the benefits to the class.

1   The payment of enhancement awards to successful class representatives is appropriate

2   and the amount of $15,000 to Plaintiff is within the typically accepted range.  *See e.g. Van*

3   *Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award

4   of $50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366, 374 (S.D.

5   Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000);

6   *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000

7   Incentive award); *Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240,

8   251-252 (S.D. Ohio 1991) ($50,000 awarded to each class representative); *Glass v. UBS Fin.*

9   *Servs*., No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007)

10  (awarding $25,000 Incentive award in FLSA overtime wages class action); *Cook v. Niedert*, 142

11  F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 Incentive award to class representative in

12  ERISA case).  Moreover, a $15,000 service payment represents a mere **0.18%** of the gross

13  settlement amount.  For such reasons, Plaintiff respectfully requests that this Court find the

14  enhancement payment amount of $15,000 to Plaintiff as fair, reasonable, and adequate and that

15  the enhancement payment be awarded to Plaintiff.

16  ## X.   THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED

17  Here, Phoenix Settlement Administrators dutifully administered the settlement.  (*See*

18  *generally* Kruckenberg Decl.)  The Agreement provides up to $69,750.00for Phoenix's cost.

19  (Settlement Agreement § 5.2).  Plaintiff respectfully requests that the Court award Phoenix its

20  costs in the amount of $69,750.00.

21  ## XI.   CONCLUSION

22  Based on the foregoing, Plaintiff and Class Counsel respectfully request that this Motion

23  be granted in its entirety and grant Plaintiff's counsel's fee request of $2,750,000.00, costs

24  requested in the amount of $178,996.11, class representative enhancement of $15,000.00, and

25  settlement administration costs of $69,750.00.  The Parties have reached this settlement

26  following extensive litigation, ongoing case discussions and arms-length negotiations.  Plaintiff

27  respectfully requests that the Court:

28  1.   Grant final approval of the proposed settlement;

2.      Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3.      Order payment from the settlement proceeds to Class Counsel and Plaintiff in compliance with the Settlement Agreement;

4.      Enter the proposed Final Approval Order and Judgment submitted herewith; and

5.      Retain continuing jurisdiction over the implementation, interpretation, , and consummation of the settlement.


DATED:  December 23, 2021                    DIVERSITY LAW GROUP, P.C.
                                             HYUN LEGAL, P.C.
                                             POLARIS LAW GROUP

                                             By:  _____*/s/ Larry W. Lee*_____
                                             Larry W. Lee
                                             Nick Rosenthal
                                             Kristen Agnew
                                             Max W. Gavron
                                             Mai Tulyathan
                                             Dennis S. Hyun
                                             William L. Marder
                                             Attorney for Plaintiff and the Class