UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ISAAC RODRIGUEZ,<br><br>    Plaintiff,<br><br>v.<br><br>NIKE RETAIL SERVICES, INC.,<br><br>    Defendant. | Case No. 14-cv-01508-BLF<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL; APPROVING ATTORNEYS' FEES AND COSTS AND SETTLEMENT ADMINISTRATOR COSTS; APPROVING IN PART ENHANCEMENT AWARD**<br><br>[Re: ECF No. 159] |

Before the Court is Plaintiff Isaac Rodriguez's ("Rodriguez") Motion for Final Approval of the class action settlement with Defendant Nike Retail Services, Inc. ("Nike") in this wage and hour case under California law relating to Nike's alleged failure to compensate its retail employees for time spent in security inspections required upon leaving its retail stores. During the course of litigation, the Court granted class certification for Rodriguez and entered judgment for Nike based on the federal *de minimis* doctrine, only to be reversed on appeal to the Ninth Circuit based on the finding of the California Supreme Court in the *Troester* case that the federal *de minimis* doctrine does not apply to California wage and hour claims. *See Troester v. Starbucks Corp.*, 5 Cal.5th 829 (2018). Since then, the parties have settled and the Court has granted preliminary approval of the class action settlement. *See* Prelim. Approval Order, ECF No. 156. Rodriguez seeks (1) final approval of the proposed class action settlement in the total amount of $8,250,000; (2) approval of Class Counsel's application for $2,750,000 in attorneys' fees and reimbursement of $178,996.11 in costs; (3) approval of Rodriguez's request for an enhancement award of $15,000; and (4) approval of $69,750 in costs for Phoenix Settlement Administrators (the "Settlement Administrator"). *See* Final Approval Motion, ECF No. 159.

1    Based on the reasoning below, the Court (1) GRANTS final approval of the class action
2    settlement; (2) APPROVES the $2,750,000 in attorneys' fees and $178,996.11 in costs for Class
3    Counsel; (3) APPROVES IN PART Rodriguez's enhancement award request in the amount of
4    $7,500; and (4) APPROVES the $69,750 in the Settlement Administrator's costs.  Items (2), (3),
5    and (4) SHALL be deducted from the total settlement amount of $8,250,000.

## I. BACKGROUND

Nike is an Oregon corporation with retail stores throughout California.  *See* First Amended Complaint ("FAC"), ECF No. 27 ¶ 8.  Rodriguez was employed at one of Nike's retail stores until his termination around 2012.  *See id.* ¶¶ 7, 23.

Rodriguez filed this action in the Superior Court of California for the County of Santa Clara on February 25, 2014.  *See* Notice of Removal, ECF No. 1 ¶ 1.  Nike removed the case to the Northern District of California on April 1, 2014, and it was reassigned to this Court on May 1, 2014.  *See* ECF Nos. 1, 14.  Rodriguez filed an amended complaint on December 8, 2014.  *See* FAC, ECF No. 27.  Rodriguez alleged that Nike required employees of its retail stores to go through a security inspection when they left the store, but it failed to compensate the employees for the time spent completing the inspection.  *See id.*  Rodriguez claimed that in doing so, Nike violated (1) Cal. Labor Code §§ 1194 and 1997; (2) Cal. Labor Code §§ 510 and 1194; and (3) Cal. Bus. & Prof. Code §§ 17200, *et seq*.  *See id.*  Rodriguez sought relief including waiting time penalties.  *See id.*  Rodriguez brought his claims on behalf of a putative class consisting of "all current and former non-exempt retail store employees of DEFENDANTS who worked in California during the period from February 25, 2010 to the present."  *Id.* ¶ 16.

On August 19, 2016, the Court certified the class.  *See* Order Granting Motion for Class Certification, ECF No. 69.  Nike moved for summary judgment on all of Rodriguez's claims on January 31, 2017.  *See* Motion for Summary Judgment, ECF No. 84.  The Court granted Nike's motion based on the finding that the 10-minute daily threshold of the federal *de minimis* doctrine prevented Rodriguez from recovering given the amounts of time at issue in the security inspections.  *See* Order Granting Defendant's Motion for Summary Judgment, ECF No. 100.  Rodriguez appealed the ruling to the Ninth Circuit.  While the appeal was pending, the Court taxed Nike's costs in full

2

1  and imposed $17,839.02 in costs against Rodriguez. *See* ECF Nos. 110–11. On June 28, 2019, the Ninth Circuit reversed, finding in light of the decision by the California Supreme Court in *Troester* that the federal *de minimis* doctrine applied by the Court did not apply to California wage and hour claims. *See* ECF No. 113; *Troester*, 5 Cal.5th 829. The Ninth Circuit remanded the case for further proceedings consistent with *Troester*. *See* ECF No. 113.

Following remand, the parties stipulated to amend the class certification order to cover the time period from February 25, 2010 to November 15, 2019, because Nike had instated a policy compensating employees for time spent in security inspections as of November 15, 2019. *See* Order Granting Stipulation, ECF No. 136. On December 15, 2020, the parties notified the Court that they had settled. *See* Joint Notice of Class Action Settlement, ECF No. 150.

Rodriguez moved for preliminary approval on April 23, 2021. *See* Prelim. Approval Motion, ECF No. 153. The Court granted preliminary approval of the class action settlement on September 30, 2021. *See* ECF No. 156.

Under the Settlement Agreement, the Settlement Class is "all current and former non-exempt/hourly retail store employees of Defendant who worked in California at any time from February 25, 2020 through and including November 15, 2019." *See* Lee Decl., ECF No 153-1, Ex. A, Class Action Settlement Agreement § 1.1. Any class member who does not opt-out from the settlement will automatically receive his or her share of the proceeds, as determined by his or her shifts worked as a fraction of the total shifts worked by the class between February 25, 2010 through November 15, 2019. *See id.* §§ 2.31, 5.4. On average, each class member will receive a payment of approximately $319.99, while the lowest individual settlement payment to be paid will be approximately $11.36 and the highest will be approximately $2,280.74. *See* Kruckenberg Decl., ECF No. 158-9 ¶ 11; Second Suppl. Lawrence Decl., ECF No. 163 ¶ 9. Remaining monies from uncashed checks will be paid to the *cy pres* beneficiary, Legal Aid at Work. *See* Lee Decl., ECF No 153-1, Ex. A, Class Action Settlement Agreement § 10.5.

Following preliminary approval, the Settlement Administrator provided notice by mail to each of the 16,635 class members. *See* Second Suppl. Lawrence Decl., ECF No. 163 ¶ 3. After sending 592 returned notice packets to a forwarding address and 312 additional returned notice

packets to an address located by skip tracing, only 34 notice packets are considered undeliverable. *See id.* ¶ 4.

Rodriguez moved for final approval on December 23, 2021. *See* ECF Nos. 158–59. Nike filed a Statement of Non-Opposition to Rodriguez's Motion on January 6, 2022. *See* ECF No. 160. On January 18 and 21, 2022, Rodriguez filed supplemental declarations from the President of Business Development at the Settlement Administrator explaining the implementation of the notice plan approved by the Court during preliminary approval. *See* ECF Nos. 161, 163.

Rodriguez seeks (1) final approval of the proposed class action settlement; (2) approval of Class Counsel's application for $2,750,000 in attorneys' fees and reimbursement of $178,996.11 in costs; (3) approval of Rodriguez's request for an enhancement award of $15,000; and (4) approval of $69,750 in the Settlement Administrator's costs. *See* Final Approval Motion, ECF No. 159. The Court heard Rodriguez's motion on January 27, 2022.

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Rule 23 Certification Requirements

#### i. The Class Meets the Requirements for Certification Under Rule 23

The Court previously granted class certification in this case for a class that is materially the same as the settlement class. *See* Order Granting Motion for Class Certification, ECF No. 69; *see also* Preliminary Approval Order, ECF No. 156 ¶ 3. Since the Court granted class certification, the parties stipulated to amend the class definition. *See* ECF No. 136. The Court certified the following class: "All current and former non-exempt retail store employees of Defendant who worked in California during the period from February 25, 2010 to the present." *See* Order Granting Motion for Class Certification, ECF No. 69. The parties stipulated to amend the class definition as follows: "[A]ll current and former non-exempt retail store employees of Defendant who worked in California during the period from February 25, 2010 to *November 15, 2019.*" *See* ECF No. 136 (emphasis added). The amendment does not change the Court's analysis in the class certification order—the parties amended the class definition based on the fact that Nike changed its retail policies as of November 15, 2019 to pay workers for the time they spent in security inspections. *See* Final Approval Order, ECF No. 159 at 12–13. Further, the Court is not aware of any facts that undermine

the Court's conclusion in certifying the class.

Accordingly, the Court concludes that the requirements of Rule 23 are met and thus that certification of the class for settlement purposes is appropriate.

### ii. The Settlement is Fundamentally Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* at 819 (internal quotation marks and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon*. Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026–27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02–ML–1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (citations omitted).

#### a. Notice Was Adequate

The Court previously approved Rodriguez's plan for providing notice to the class when it granted preliminary approval of the class action settlement. *See* Preliminary Approval Order, ECF No. 156 ¶ 9. Prior to granting preliminary approval, the Court carefully examined the proposed class notice and notice plan, and determined that they complied with Federal Rule of Civil

1    Procedure 23 and the constitutional requirements of Due Process. *See id*. Rodriguez now provides
2    a declaration from the President of Business Development at the Settlement Administrator
3    explaining the implementation of the plan. *See* Second Suppl. Lawrence Decl., ECF No. 163. Based
4    on that declaration, 16,365 Notice Packets were mailed, with 938 (approximately 6%) having been
5    returned undeliverable, and all but 34 of these having been mailed to updated addresses. *See id.* ¶¶
6    4–5. Based on the implementation details of the notice plan, the Court is satisfied that the Settlement
7    Class has received the "best notice that is practicable under the circumstances."
8    Fed. R. Civ. P. 23(c)(2)(B).

          b. *Hanlon* Factors

The Court now turns to the *Hanlon* factors. Under the first and second factors, the court considers (1) the strength of Rodriguez's case, weighing the likelihood of success on the merits and the range of possible recovery; and (2) the risk, expense, complexity, and duration of further litigation. *See Hanlon*, 150 F.3d at 1026–27. While Rodriguez prevailed on appeal with the Ninth Circuit finding that the federal *de minimis* doctrine did not apply, the Ninth Circuit in line with the *Troester* decision left open the possibility that the security inspections at issue in this case could be so irregular or brief that it would be unreasonable to require compensation. *See* ECF No. 113 at 16–17; *Troester*, 5 Cal.5th at 848. Further, as to Rodriguez's PAGA claim, the Court has discretion to decrease any applicable penalties that may have been assessed. Accordingly, Rodriguez's success in this case was not assured, and significant risk, expense, complexity, and time likely lay ahead if the parties did not settle. Therefore, the Court finds that the first and second *Hanlon* factors favor settlement.

Under the third factor—the risk of maintaining class action status throughout the trial—since the Court granted class certification, there was little risk related to maintaining class action status throughout the trial. *See Hanlon*, 150 F.3d at 1026–27.

Fourth, the settlement recovery for the class members is substantial given the circumstances of the case. On average, each class member will receive a payment of approximately $319.99, with the highest individual settlement payment to be approximately $2,280.74. *See* Final Approval Motion, ECF No. 159 at 14; Second Suppl. Lawrence Decl., ECF No. 163 ¶ 9. The Court finds this

to be a significant payout, particularly considering the scale of the alleged harm and the fact that class members are retail employees.

Under the fifth *Hanlon* factor, courts consider "the extent of discovery completed and the stage of the proceedings." *Hanlon*, 150 F.3d at 1026–27. In this case, settlement was reached after years of litigation and substantial discovery, including depositions of Rule 30(b)(6) witnesses and experts, interviews of class members, production of class data and time records, and extensive expert discovery. The Court is satisfied that the parties were sufficiently familiar with the issues in this case to have informed opinions regarding its strengths and weaknesses under factor five.

The sixth *Hanlon* factor—the experience and views of counsel—favors approving the settlement. *See Hanlon*, 150 F.3d at 1026–27. Lead Counsel's conclusion is that the Settlement is fair and reasonable and in the best interest of the settlement class. *See* Lee Decl., ECF No. 158-1 ¶¶ 3-8; Hyun Decl., ECF No. 158-2 ¶¶ 7-9; Marder Decl., ECF No. 158-3 ¶¶ 12-13. Further, Lead Counsel has demonstrated their thorough understanding of the strengths and weaknesses of this case and their extensive experience litigating prior employment class actions cases. *See In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2007) (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and the type of litigation in general).

The seventh *Hanlon* factor is neutral, since there was no government participant in the case. *See Hanlon*, 150 F.3d at 1026–27.

Under the eighth *Hanlon* factor, the Court considers the "reaction of the class members to the proposed settlement." *See Hanlon*, 150 F.3d at 1026–27. While over 16,000 notice packets were sent out to class members with only 34 undeliverable, no objections have been filed and there has only been one opt-out from the class. *See* Second Suppl. Lawrence Decl., ECF No. 163 ¶¶ 3–7. "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Knapp v. Art*, 283 F.Supp.3d 823, 833–34 (N.D. Cal. 2017).

Based on those factors, and after considering the record as a whole guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement is not the result of collusion, and that the settlement is fair, adequate, and reasonable.

\* \* \*

Rodriguez's Motion for Final Approval of Class Action Settlement is GRANTED.

### III. MOTION FOR ATTORNEYS' FEES AND COSTS, PLAINTIFF'S ENHANCEMENT AWARD, AND ADMINISTRATOR'S COSTS

Class Counsel seeks an award of $2,750,000 in attorneys' fees and $178,996.11 in costs. *See* Final Approval Motion, ECF No. 159 at 9. Further, Rodriguez requests (1) an enhancement award of $15,000 and (2) costs of $69,750.00 for the Settlement Administrator. *See id.* at 30.

#### A. Attorney's Fees and Expenses

##### i. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 F.3d at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at

1   *4 (N.D. Cal. Nov. 3, 2009) (citations omitted).

2       Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941 (citations omitted). This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942 (citations omitted).

    In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. ... [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C–11–00594–DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted).

    An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

    **ii.   Discussion**

    Lead Counsel seeks an award of attorneys' fees totaling $2,750,000, which is 33% of the $8,250,000 gross Settlement Fund, in addition to $178,996.11 in costs.

    The Court first approves the $178,996.11 in costs. The Court has reviewed Class Counsel's itemized lists of costs and finds that all of the expenses were necessary to the prosecution of this litigation. *See* Decl. of Larry W. Lee, ECF No. 158-1 ¶ 19, Ex. B; Decl. of Dennis S. Hyun, ECF

No. 158-2 ¶ 13, Ex. B; Decl. of William Marder, ECF No. 158-3 ¶ 17, Ex. B.

The Court also finds the amount of attorneys' fees to be reasonable. A lodestar cross-check supports the reasonableness of the fees requested. Class Counsel states that the total lodestar from inception of this case through settlement is $2,333,980.00. *See* Final Approval Motion, ECF No. 159 at 26. The hourly rates charged by Class Counsel have been approved by multiple courts across California and the Court finds the number of hours expended to be reasonable. *See* Decl. of Larry W. Lee, ECF No. 158-1 ¶ 18; Decl. of Dennis S. Hyun, ECF No. 158-2 ¶ 12; Decl. of William Marder, ECF No. 158-3 ¶ 16; Decl. of Kristen M. Agnew, ECF No. 158-4 ¶ 13; Decl. of Mai Tulyathan, ECF No. 158-5 ¶ 15; Decl. of Max Gavron, ECF No. 158-6 ¶ 13; Decl. of Nick Rosenthal, ECF No. 158-7 ¶ 4. Using $2,333,980.00 as the lodestar results in a positive multiplier of approximately 1.17. *See* Final Approval Motion, ECF No. 159 at 27. The Court considers this to be a reasonable multiplier, particularly in light of the significant effort Class Counsel expended in litigating this case. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases[.]") (citation omitted). Under the percentage-of-recovery method, the attorneys' fees Class Counsel is requesting are 33.3% of the $8,250,000 gross Settlement Fund, which is above the 25% "benchmark" in this circuit. *Bluetooth*, 654 F.3d at 942. However, the Court finds the requested attorneys' fees reasonable, especially in light of the significant amount of work Class Counsel performed in this case, including for the appeal to the Ninth Circuit, and the excellent results achieved during a time when California law was unsettled. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378–79 (9th Cir. 1995); *Laffitte v. Robert Half Int'l*, 1 Cal.5th 480, 506 (2016); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989) (collecting cases). Accordingly, the requested fee amount is reasonable.

### B. Enhancement Award

Rodriguez seeks an enhancement award of $15,000. *See* Final Approval Motion, ECF No. 159 at 28–30. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private

10

attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

"Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). Rodriguez's declaration describes the work he did for this case, including meeting with his attorneys, providing his attorneys documents and information, reviewing pleadings and documents for the case, and preparing for his deposition, which required him to travel from Gilroy to San Jose. *See* Decl. of Isaac Rodriguez, ECF No. 158-8 ¶ 4. He estimates that he spent approximately 50 hours in connection with this case. *See id*. The work Rodriguez describes in connection with this case is typical for a named plaintiff, as are the risks of payment of fees and costs if the case did not prevail, which Rodriguez also references. *See id.* ¶¶ 9–10. Such efforts and risks do not justify an enhancement award of $15,000, which is toward the higher end of enhancement awards for this district. *See Bellinghausen*, 306 F.R.D. at 267; *Chu v. Wells Fargo Investments, LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011) (finding $10,000 service awards excessive for $6.9 million settlement). Such an award would represent a rate of $300 per hour that Rodriguez spent on this case.

The Court typically awards an enhancement award around $5,000. However, given the significant amount of time during which this case has been pending and that Rodriguez has held himself out publicly regarding this case, the Court will grant Rodriguez an amount higher than its typical $5,000 award. Accordingly, the Court approves a $7,500 enhancement award for Rodriguez—not the requested $15,000 award.

### C. Settlement Administrator Fee

Finally, the Court finds that the $69,750 settlement administrator fee is reasonable in this case, as it does not exceed the cap provided by the Settlement Agreement that the Court approved at the preliminary approval stage. *See* Lee Decl., ECF No 153-1, Ex. A, Class Action Settlement Agreement § 10.3.

///

///

///

11

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Rodriguez's Motion for Final Approval of Class Action Settlement in the total amount of $8,250,000 is GRANTED;

(2) $2,750,000 in attorneys' fees and $178,996.11 in costs for Class Counsel is APPROVED;

(3) an enhancement award for Rodriguez is APPROVED IN PART in the amount of $7,500;

(4) the Settlement Administrator's costs of $69,750 are APPROVED; and

(5) the timely request for exclusion by Francisco A. Soto is APPROVED.

Dated: January 27, 2022

_____
BETH LABSON FREEMAN
United States District Judge